C. Michael **MILLNER**, Appellant–
Plaintiff,

v.

Jeff **MUMBY** d/b/a Mumby's Concrete Basements, Appellee–Defendant.

No. 90A05–9203–CV–71.

Court of Appeals of Indiana,
Fifth District.

Sept. 30, 1992.

John W. Bailey, Matheny Michael Hahn & Bailey, Huntington, for appellant-plaintiff.

Gary J. Rickner, David R. Steiner, Barrett & McNagny, Fort Wayne, for appellee-defendant.

SHARPNACK, Chief Judge.

C. Michael Millner appeals the judgment of the Wells Circuit Court which found that Jeff Mumby had not breached the construction contract between the parties by performing his obligations under the contract in an unworkmanlike manner. We affirm.

Millner raises two issues, which we restate as follows:

1. Did the trial court violate the parol evidence rule when it admitted testimony that Millner was the party who drafted the contract specifications that proved to be defective?

2. Was the judgment supported by sufficient evidence?

The following are the facts most favorable to the judgment in favor of Mumby. Millner is an electrical engineer who owned property located at 7853 West 600 North in Andrews, Indiana. Mumby is a self-employed businessman who operates Mumby's Concrete Basements, a business that specializes in pouring concrete walls and basements.

In July of 1984, Millner, who had decided to build a berm house [1] on the West 600 North property, contacted Mumby about pouring the concrete walls. Millner told Mumby that he wanted Mumby to pour sixteen foot high walls. Mumby responded that he had never poured walls that high and that he was not sure how to bid on the project because Millner did not have available plans and specifications. Mumby informed Millner that he had never poured walls for an earth home [2] without plans and specifications, and he suggested that Millner have Moss Engineering in Fort Wayne draw up plans and specifications for the home. Finally, Mumby told Millner that he would not pour the walls without plans and specifications.

Millner did not have an engineering firm draw up plans. Instead, he developed his own plans and specifications which he orally related to Mumby. These plans still called for the poured walls to be sixteen feet high. Mumby was unsure whether his eight foot high pouring forms were capable of being stacked in order to pour a sixteen foot high wall. He contacted the manufacturer, which assured him that the forms could be stacked as long as he used additional ties to secure the forms.

Millner and Mumby then met at the job site. Millner described what he wanted Mumby to do so that Mumby could prepare a bid. Millner also told Mumby that he had already received one bid for sixteen foot high, ten inch thick, walls with one-half inch thick reinforcing rod, called rebar in the building trades, on sixteen inch centers.

Mumby bid on the job and Millner awarded him a contract to pour the footing, floors, and walls for the house and garage. Millner supplied the specifications which were written into the contract. Millner maintained that he was an engineer and that he knew what he was doing in designing the house. In addition, he said that he had consulted another engineer who was familiar with concrete work and that this other engineer was comfortable with the specifications that Millner gave to Mumby.

Millner also entered into a second contract with Mumby to have Mumby pour the footing and the wing walls that were to hold the earth that was to be mounded against the walls of the house. Just as he did with respect to the house walls, Millner provided the contract specifications for the wing walls. In both contracts, the specifications mandated the amount of rebar to be used to reinforce the walls. Millner testified that Mumby performed according to the specifications.

After Mumby completed performance under the contracts, Millner had another contractor backfill against the newly poured walls. Despite Mumby's advice to use granular material as backfill, Millner choose to backfill with clay, which holds water and creates additional pressure on the walls and roof. Mumby had poured walls for three earth homes before Millner approached him about pouring the walls for the berm home.

1. A berm house is one which is built into embanked earth.

2. An earth home is one which is built completely into the ground, with earth mounded up over

the walls. While dumping a load of clay backfill, Millner's father backed a dump truck into one of the newly poured walls.

After the completion of the house, the walls began to develop cracks. One of the wing walls completely failed. Examination by expert engineers revealed that the walls contained insufficient rebar to withstand the stress which they bore.

Millner first argues that the trial court erred when it allowed Mumby's attorney to ask Millner and Mumby which party had drafted the specifications that appeared in the contract. Millner asserts that these questions violated the parol evidence rule because they elicited evidence about matters outside the terms of the written contract. He further asserts that the written contract clearly required Mumby to pour the walls in a workmanlike manner, and the Mumby failed to pour the walls in a workmanlike manner because the walls did not meet the applicable building codes.

■ Generally, where the parties to an agreement have reduced the agreement to a written document and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *Franklin v. White* (1986), Ind., 493 N.E.2d 161, 165–166. The prohibition against the use of parol evidence is by no means complete; in fact, parol evidence may be considered as long as it has not been offered to vary the terms of the written contract. *Bollero v. Wintermute* (in Banc 1929), 91 Ind.App. 1, 4, 168 N.E. 40, 41. Thus, parol evidence may be considered to show that fraud, unintentional misrepresentation, or mistake entered into the formation of a contract. *Franklin*, 493 N.E.2d at 164; *see, e.g., Brames v. Crates* (1980), Ind.App., 399 N.E.2d 437 (mistake); *Vernon Fire & Casualty Insurance Co. v. Thatcher* (1972), 152 Ind.App. 692, 285 N.E.2d 660, *rehearing denied*, 152 Ind. App. 692, 287 N.E.2d 776, *transfer denied*, 260 Ind. 55, 292 N.E.2d 606 (misrepresentation). Indiana decisions also have held that parol evidence may be considered to show the nature of the consideration supporting a contract. *Kentucky & I.B. Co. v. Hall* (1890), 125 Ind. 220, 224, 25 N.E. 219, 220. In addition, parol evidence may be considered to apply the terms of a contract to its subject matter. *Stockwell v. Whitehead* (1911), 47 Ind.App. 423, 430, 94 N.E. 736, 739; *Ames v. Ames* (1910), 46 Ind.App. 597, 600–601, 91 N.E. 509, 511. Finally, parol evidence may be considered to shed light upon the circumstances under which the parties entered into the written contract. *Ransdel v. Moore* (1899), 153 Ind. 393, 401, 53 N.E. 767, 769; *Hall*, 125 Ind. at 224, 25 N.E. at 220.

■ Here, the trial court did not err in allowing the disputed testimony. The testimony was not intended to vary any of the terms of the written contract. It was offered to show one factor in the formation of the contract—that is, which party developed the specifications which were written into the contract. Because this testimony did not serve to vary any term of the contract, the trial court properly admitted it into evidence and considered it in reaching a judgment. Millner has stated no ground for reversal here.

■ Millner next challenges the sufficiency of the evidence supporting the trial court's judgment. When we review a trial court's special findings, we will not reverse unless the court's findings are clearly erroneous. *Steenhoven v. College Life Ins. Co. of America* (1984), Ind.App., 458 N.E.2d 661, 665, *rehearing denied*, 460 N.E.2d 973. Such findings are not clearly erroneous if they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment and are supported by evidence of probative value in the record. *Id.*

■ In this case, the trial court's findings and judgment are supported by sufficient evidence. The contract required Mumby to use specific amounts of rebar when pouring the walls. No one disputed that Mumby poured the walls as specified in the contract. There was evidence to support the finding that Millner drafted the

specifications and was satisfied that Mumby had followed them. Thus, the evidence supports the judgment assuming the trial court was correct in concluding that Mumby was insulated from liability if he followed the contract specifications drafted by Millner.

We have found no Indiana case that addresses the question of which party to a construction contract is liable for a loss occasioned by defective constructive plans and specifications where the party seeking to have the building constructed supplies the plans and specifications. Our research has shown, however, that virtually every American jurisdiction that has considered the issue has held that a contractor who builds a structure according to plans and specifications supplied by the building owner is not to be held liable if the plans and specifications prove defective. *Ridley Construction Co. v. Croll* (1963), 56 Del. 209, 192 A.2d 925, 927, 6 A.L.R.3d 1389, 1393; *see* Annot., 6 A.L.R.3d 1394 (1966), and cases cited therein.[3] We are persuaded that the same rule should be applied in Indiana.

Millner supplied the contract specifications which proved to be defective and caused the problems with his house. Mumby performed his obligations under the contract according to Millner's specifications. We will not require Mumby to pay for doing exactly what Millner required of him.

The trial court committed no error, and we affirm it in all respects.

AFFIRMED.

RUCKER and BARTEAU, JJ., concur.

---

**3.** Our research revealed that at least fifty-two federal and state jurisdictions have followed this rule.