**Carlin KRIEG, Appellant–Plaintiff,**

**v.**

**Donald HIEBER, Appellee–Defendant.**

**No. 17A05–0306–CV–311.**

Court of Appeals of Indiana.

Feb. 3, 2004.

Wm. Joseph Carlin Jr., Kruse & Kruse P.C., Auburn, IN, Attorney for Appellant.

Robert Owen Vegeler, Vegeler Law Office LLC, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Carlin Krieg ("Krieg") appeals the trial court's judgment in favor of Appellee–Defendant Donald Hieber ("Hieber"). We reverse and remand.

### Issues

Krieg raises two issues, which we restate as:

I.   Whether the trial court erred by considering parol or extrinsic evidence in making its determination that the contracting parties did not negotiate the contract price in contemplation of Krieg's right of residency; and

II.  Whether the trial court erred by concluding that the holder of a life estate is not entitled to insurance proceeds from an insurance policy procured by the reversioner.

## Facts and Procedural History

In 1999, Krieg owned a dairy farm located at 7721 State Road 8 in St. Joe, Indiana (the "Farm"), which consisted of approximately eighty-two acres of real estate. On December 23, 1997, the value of the Farm was appraised at $154,000.00. In August of 1999, Krieg asked Hieber if he wanted to purchase the Farm, and Hieber responded in the negative. Krieg then informed Hieber that he intended to sell the Farm at a price of one hundred and six thousand dollars, with an additional twenty-four thousand dollars for the machinery and one thousand dollars per cow for the cattle. Hieber told Krieg that he was interested in purchasing the Farm, machinery, and cattle. Indeed, that same day, Hieber went to the bank to inquire about financing the purchase. Because Hieber was only able to secure financing for the Farm and machinery, he told Krieg that he would purchase the Farm and machinery, but not the cattle. Subsequently, however, Krieg and Hieber reached an agreement concerning the sale of the cattle. Krieg orally informed Hieber that he wanted to retain a "right of residency" in the Farm. Tr. at 25. On September 14, 1999, Krieg executed a hand-written statement ("Statement"), which Hieber signed, whereby Krieg agreed to sell the Farm for one hundred and six thousand dollars, the machinery for twenty-four thousand dollars, and the cattle for forty-five thousand dollars. The Statement provides, in part, that: "I [Krieg] have the privilege of living in home for life time." Appellant's App. at 11.

On October 6, 1999, Krieg and Hieber executed a Purchase Agreement regarding the sale of the Farm, the machinery, and the cattle. The Purchase Agreement provides that Krieg "shall transfer full and complete possession at the time of closing, subject to [his] right of residency." Ex. 1. The Purchase Agreement also contains an integration clause as follows:

> Upon acceptance, this offer shall become binding upon and inure to the benefit of [Hieber] and [Krieg] and their respective heirs, executors, administrators[,] successors, and assigns, and shall be deemed to contain all the terms and conditions agreed upon, it being agreed that there are no conditions, representations, warranties or agreements not stated in this instrument.

*Id.* In addition, pursuant to the Purchase Agreement, Hieber requested that Krieg maintain fire and extended coverage insurance on any improvements to the Farm until the date of closing. At closing, on November 5, 1999, Krieg, i.e., the Grantor, executed a Warranty Deed to Hieber, i.e., the Grantee, for the Farm, "[s]ubject to right of residency of the Grantor in the house, garage, apartment, and land thereto, including use of the driveway."[1] Appellant's App. at 54. The Warranty Deed was recorded on November 9, 1999.

Prior to December 6, 1999, Krieg carried insurance on the Farm. However, on December 6, 1999, Krieg cancelled insurance coverage on the Farm in the amount of $189,000.00 and only retained insurance coverage in the amount of $5,000.00 for his personal property. On or about December

---

1. The Warranty Deed identifies "Carlin Mack Krieg" as the Grantor and "Donald L. Hieber" as the Grantee and incorporates by reference Exhibit A. Appellant's App. at 53. However, Exhibit A contains numerous errors. For example, it identifies "Michael Bruce Krieg" as the Grantor and "Calvin Mack Krieg" as the Grantee. *Id.* at 54. Exhibit A also purports to have been notarized on November 5, 1998, as opposed to November 5, 1999. Because the parties do not dispute that the Warranty Deed and Exhibit A apply to the transaction in dispute, we will assume that the inconsistencies contained in Exhibit A are errors that do not render the Warranty Deed invalid.

10, 1999, Hieber purchased insurance coverage on the Farm.

On November 19, 2000, the house located on the Farm was partially burned in an accidental fire, rendering it uninhabitable. Because the fire loss was covered by Hieber's insurance policy, Hieber filed an insurance claim and received the insurance proceeds. Hieber did not repair the house, but rather, used the proceeds to reduce his mortgage debt on the Farm.

On May 23, 2001, Krieg filed a Complaint for Right of Residency against Hieber, alleging estoppel and breach of contract. In his complaint, Krieg argued that his right of residency served as consideration for the reduced purchase price in the Purchase Agreement between himself and Hieber and, thus, Hieber breached the contract by not using the fire insurance proceeds to reconstruct the house wherein Krieg resided. As relief, Krieg requested that the trial court: (1) impose a constructive trust over the insurance proceeds; (2) require Hieber to use the insurance proceeds to rebuild the damaged portion of the residence; (3) award damages for loss of use of the residence until such time as it is rebuilt; and (4) award attorney fees. At trial, Krieg's request for relief changed in that he no longer wished to live in the "rebuilt" house on the Farm. Instead, Krieg asked the trial court to determine, with the help of life expectancy tables, the value of his life estate and award damages accordingly. Tr. at 18. After conducting a bench trial, the trial court entered a judgment in favor of Hieber. In so doing, the trial court issued findings of fact and conclusions thereon. In relevant part, the trial court issued Finding 14 and Conclusions 5 and 6, as follows:

### FINDINGS OF FACT

\* \* \* \* \*

14. Krieg initiated the conversation concerning the sale of the Farm and set the price which was accepted by Hieber before Krieg ever mentioned and before Hieber ever knew that Krieg wanted to reserve a right of residency. At the time that Krieg made the offer which was accepted by Hieber for the Farm, Hieber had no knowledge of Plaintiff's Exhibit 3 which was an appraisal of the Farm made several years earlier for Krieg's refinancing and which indicated a fair market value of $154,000.00 for the Farm. At no time did Hieber know of the appraisal set forth in Plaintiff's Exhibit 3 and did not believe that the Farm was worth $154,000.00 and would not have purchased the Farm for $154,000. At no time was Hieber interested in buying the Farm until he was approached by Krieg with a volunteered, fixed price.

\* \* \* \* \*

### CONCLUSIONS OF LAW

\* \* \* \* \*

5. The price paid by Hieber in accepting the offer of Krieg was fair under the circumstances and was not discounted in order to recognize a right of residency in Krieg.

6. The price paid for the Farm by Hieber was reasonable and was accepted by Hieber, subject to financing, before Hieber was knowledgeable of the right of residency, and therefore, Hieber could not have discounted the price based upon such.

7. Krieg acted knowingly and voluntarily in changing the insurance after the sale had closed, acknowledging that he was only insuring

the personal property and that he did not wish to insure a right of residency.

8. Both parties had an insurable interest in the Farm in that a life tenant and a [reversioner] each has an insurable interest. A right of residency, although not the same as a life estate, is similar.

\* \* \* \* \*

11. Krieg had more than adequate time and ability to insure his interests in the Farm and to protect his interests both individually and through his attorney. Such is shown by the Purchase Agreement which stated that Hieber could receive insurance proceeds for any preclosing loss.

12. Krieg voluntarily placed himself in the position of losing his right of residency, or the value thereof.

13. Krieg has failed to meet his burden of proof on the relevant issues in this cause.

Appellant's App. at 5–7. It is from the trial court's order that Krieg now appeals.

## Discussion and Decision

### I. Standard of Review

■■■ In challenging the trial court's judgment, Krieg, i.e., the party carrying the burden of proof at trial, is appealing from a negative judgment. A party appealing a negative judgment must establish that the evidence is without conflict and leads to but one conclusion and that the trial court did not reach that conclusion. *OVRS Acquisition Corp. v. Cmty.*

*Health Serv., Inc.,* 657 N.E.2d 117, 125 (Ind.Ct.App.1995), *trans. denied.* The appellant may attack the trial court's judgment only as contrary to law. *Id.* On appeal, we will affirm the trial court's judgment unless all evidence leads to the conclusion that the trial court's findings are clearly erroneous and against the logic and effect of the facts. *In re Estate of Banko,* 622 N.E.2d 476, 480–81 (Ind.1993). In determining whether the findings of fact are clearly erroneous, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 481. Instead, we will consider only the evidence most favorable to the judgment together with all reasonable inferences that may be drawn therefrom. *Maddox v. Wright,* 489 N.E.2d 133, 134 (Ind.Ct.App.1986).

### II. Analysis

#### A. Parol Evidence

■■■ Krieg first argues that the trial court erred by considering certain parol evidence at trial.[2] In particular, Krieg challenges the trial court's consideration of evidence regarding the "negotiations" between the contracting parties on the purchase price of the Farm. In general, where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties, as Krieg and Hieber did in this case, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *Millner v.*

2. Hieber argues that Krieg has waived this argument because he failed to object contemporaneously to the admission of parol evidence at trial. However, we note that: " '[t]he parol evidence rule is a rule of preference and of substantive law' which prohibits both the trial court and appellate court from

considering such evidence even though it was admitted to trial without objection." *Hancock v. Kentucky Cent. Life Ins. Co.,* 527 N.E.2d 720, 725 (Ind.Ct.App.1988) (quoting *Franklin v. White,* 493 N.E.2d 161, 165–66 (Ind.1986)), *trans. denied.*

*Mumby,* 599 N.E.2d 627, 629 (Ind.Ct.App. 1992). However, the prohibition against the use of parol evidence is by no means complete. Indeed, parol evidence may be considered if it is not being offered to vary the terms of the written contract, and to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract. *Id.* Moreover, our supreme court has held that parol evidence may be considered to show the nature of the consideration supporting a contract. *Kentucky & I.B. Co. v. Hall,* 125 Ind. 220, 224, 25 N.E. 219, 220 (1890). In addition, parol evidence may be considered to apply the terms of a contract to its subject matter and to shed light upon the circumstances under which the parties entered into the written contract. *Millner,* 599 N.E.2d at 629.

■■■■ Here, the trial court did not err in considering parol evidence at trial. The extrinsic evidence was not intended to vary any of the terms of the written Purchase Agreement. Rather, it was offered to show one factor in the formation of the contract—i.e., consideration.[3] The evidence reveals that in December of 1997, the Farm was appraised at $154,000.00. The testimony further demonstrates that, between December of 1997 and November of 1999, nothing substantial occurred that would have altered the Farm's value. Nevertheless, Krieg agreed to sell the Farm to Hieber for only $106,000.00. At trial, Krieg explained that the consideration or bargained-for-exchange behind executing the Purchase Agreement at such a reduced price, i.e., a price that constitutes

an approximate 31% reduction in the value of the Farm, was his right of residency. As such, this extrinsic evidence demonstrated the nature of the consideration supporting the Purchase Agreement and, thus, was not barred by the parol evidence rule.

In addition, the evidence shed light upon the circumstances under which Krieg and Hieber entered into the Purchase Agreement. It explained, for example, why Krieg, a man of sound mind, would agree to sell the Farm for such a reduced price. Because this testimony regarding the parties' pre-contractual negotiations did not serve to vary any term of the contract, the trial court properly admitted it into evidence and considered it in reaching a judgment. *See, e.g., id.*

■■■ However, in light of this parol evidence, the portions of the trial court's Finding 14 and Conclusions 5 and 6 that pertain to whether Krieg and Hieber negotiated the purchase price of the Farm are clearly erroneous, as they are against the logic and effect of the facts. In ascertaining the terms of the contract between Krieg and Hieber, the trial court appears to have focused upon the parties' pre-contractual negotiations instead of the actual Purchase Agreement itself. The fact that Krieg initially fixed the purchase price of the Farm at $106,000.00 and Hieber, apparently unaware of Krieg's reservation of a right of residency, immediately applied for financing without negotiating further, does not support the trial court's findings and conclusions that Hieber accepted

---

**3.** We have held that "[a]n offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract." *Homer v. Burman,* 743 N.E.2d 1144, 1146–47 (Ind.Ct.App.2001). The concept of consideration is often encapsulated by the phrase "bargained for exchange." *DiMizio v. Romo,* 756 N.E.2d 1018, 1022 (Ind.Ct.App.2001), *trans. denied.* To constitute consideration, the promisor must receive a benefit and the promisee must receive a detriment. *Id.* at 1022–23. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. *Id.* Whereas, a detriment is a legal right the promisee has forborne. *Id.*

Krieg's offer to sell the Farm before he knew that Krieg wanted a right of residency. Rather, the Purchase Agreement, which comprises Krieg's offer and Hieber's acceptance, expressly provides that Krieg "shall transfer full and complete possession at the time of closing, subject to [his] right of residency." Ex. 1.

Moreover, one can easily infer from the record that Hieber did not attempt to negotiate for a better purchase price because he knew that the Farm was worth more than $106,000.00.[4] Indeed, the evidence demonstrates that when Krieg first approached Hieber about purchasing the Farm, Hieber was not interested. However, after Krieg informed Hieber that the purchase price of the Farm would be one hundred and six thousand dollars, Hieber was so interested in purchasing the Farm that he went to the bank to secure financing that same day. In addition, the record reveals that prior to the execution of the Purchase Agreement, Krieg informed Hieber about his intention to retain a right of residency. After hearing Krieg's intention, Hieber understood that the fixed price contemplated Krieg's right of residency. Yet, Hieber did not negotiate a price reduction presumably because the purchase price of $106,000.00 was still acceptable to Hieber, even with Krieg's right of residency. Accordingly, to the extent that the trial court's findings and conclusions suggest that Hieber accepted Krieg's offer to sell the Farm before he knew of Krieg's desire to reserve a right of residency, they are clearly erroneous.

### B. A Life Tenant's Right to Insurance Proceeds

Second, Krieg maintains that the trial court erred by concluding that the holder of a life estate is not entitled to insurance proceeds from an insurance policy procured by the reversioner. Before we address this issue, we note that, at the conclusion of the bench trial, the trial court found that Krieg does not have a life estate, but rather, a right of residency that is similar to a life estate. However, the evidence reveals that Krieg has a life estate in the house, garage, apartment, and land thereto, including use of the driveway. Indeed, the Purchase Agreement provides that the sale of the Farm is contingent upon Krieg's right of residency. In addition, the Statement provides that Krieg should have the privilege of living in the house for his lifetime.[5] The use of the term "life estate" is not necessary to create such an estate, but the intention to create a life estate may be expressed in any equivalent and appropriate language. *Pointer v. Lucas*, 131 Ind.App. 10, 22, 169 N.E.2d 196, 202 (1960). Here, Krieg's "right of residency" for life is equivalent language to express a life estate. *See, e.g., Gladden v. Jolly*, 655 N.E.2d 590, 592 (Ind. Ct.App.1995) (holding that in the context of wills that a "devise for or during the devisee's lifetime, or for as long as the devisee shall live, or until the devisee's death, or such similar phrase, creates a life estate in the devisee, unless other provisions show another intent"). Unlike other life estates, however, Krieg's life estate is

---

4. At trial, Hieber testified that he had not observed or reviewed the 1997 appraisal of the Farm. However, Hieber did not have to see the appraisal itself to know that the Farm was worth more than $106,000.00. Indeed, at the time of the sale at issue, Hieber owned his own farm and worked as a field man for "Schenkels," ensuring that farmers keep their farms at "Grade A status." Tr. at 22.

5. The Statement is not barred by the parol evidence rule because it was not offered to vary the terms of the Purchase Agreement. Rather, the Statement simply clarifies the duration of Krieg's "right of residency."

limited to residing in the residence. Krieg may not sell his life estate, lease the residence to others, or permit others to live there without him. *See, e.g., id.* at 593. Thus, we hold that Krieg has a limited life estate in the house and premises.

■ The next question regards the proper disbursement of the fire insurance proceeds, as between Hieber, i.e., the reversioner, and Krieg, i.e., the life tenant. We confronted the inverse situation in *Ellerbusch v. Myers*, 683 N.E.2d 1352, 1354 (Ind.Ct.App.1997). There, we were asked to determine the rights of remaindermen to fire insurance proceeds collected by the life tenant after the house was totally destroyed by fire. *Id.* at 1353. In *Ellerbusch*, the remaindermen requested an order that the life tenant hold the remaindermen's share of the insurance proceeds in constructive trust. *Id.* at 1354. Another panel of this court adopted the majority rule, which holds "that where a life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, the life tenant is entitled to the entire proceeds of the insurance upon a loss to the property, even if the insurance covers the full worth of the property." *Id.* (citing 51 AM.JUR. *Life Tenants and Remaindermen* § 158 at 415–16 (1970)).

The *Ellerbusch* court also adopted the following exceptions to the majority rule: "A life tenant must provide insurance for the benefit of the remainderman if the instrument creating the estate expressly so provides, if the life tenant and remainderman so agree, or if a fiduciary relationship exists between the life tenant and the remainderman apart from the incidents of the tenancy." *Id.* By adopting the majority rule, with its exceptions, we expressly rejected the minority view that "a life tenant is entitled to all of the insurance proceeds only when the policy of insurance

merely covers the life tenant's interest." *Id.* We likewise expressly rejected the view that "insurance proceeds collected by the life tenant, regardless of the amount, stand in place of the destroyed property and must be used to rebuild the property." *Id.* at 1355 (internal citations omitted).

The *Ellerbusch* court ultimately held that, "without an agreement or separate duty, a life tenant is not required to insure the property for the remainderman's benefit or hold insurance proceeds in trust for the remainderman." In so holding, we recognized that: "Despite the apparent inequity of the rule, a remainderman may protect his interest through an agreement with the life tenant that the latter carry insurance for the remainderman's benefit." *Id.* We also acknowledged that "both the life tenant and the remainderman have insurable interests, and each can insure for himself." *Id.*

However, the present case is distinguishable from *Ellerbusch* in that, by purchasing the insurance coverage on the Farm for his own benefit, Hieber, i.e., the future interest holder, necessarily insured the property for the benefit of Krieg's limited life estate. Indeed, Krieg has a present possessory interest in the Farm by virtue of his limited life estate. Despite this distinction, we observe that the record supports the inference that Hieber agreed to provide insurance on the Farm to ensure his future interest in the Farm. In so doing, he gave Krieg the impression that he was also ensuring the limited life estate. Indeed, the Purchase Agreement provides:

> [Hieber] requests [Krieg] to maintain fire and extended coverage insurance on improvements on the above real estate in the amount of present insurable value . . . *until* the date of final closing.

Ex. 1 (emphasis added). This language demonstrates that Krieg was only required to maintain fire insurance on the Farm

until November 5, 1999, i.e., the date of closing, which he did.

Further, at trial, Hieber testified on direct as follows:

Q: Did you at all discuss with Mr. Krieg, uh, gee, Mr. Krieg, maybe, you oughta have insurance if this deal goes through?

A: Well, I told him he oughta have insurance on the, on, he oughta keep some insurance for his personal stuff, if nothin' else.

\* \* \* \* \*

Q: Now could you explain to the Judge what Mr. Baughman's relationship is to this transaction?

A: Prior to me purchasing this, Carlin Krieg had insurance at DeKalb Mutual. And when we went to, we left Mr. Kruse's office, we went on over. And I said that I needed to get insurance on the premises up there for the equipment and the ground and liability. So, I talked with Dave Baughman, and he ended up writin' me up a new policy.

\* \* \* \* \*

Q: ... Now, did you specifically tell Mr. Krieg on November 5th that he should have renter's insurance?

A: I told him that he should have insurance on the, at least, if nothing' else, on the, his items in the house.

Tr. at 28–32.

From this testimony, one may discern that Hieber gave Krieg the impression that Krieg only needed to insure his personal property, and not the real estate or improvements. As such, the notion that Hieber insure the premises, equipment, ground, and liability and that Krieg insure his personal property is tantamount to a tacit agreement between the parties.

Krieg relied upon this tacit agreement to his detriment when he converted his insurance policy to cover his personal property only. Accordingly, to the extent that the trial court concluded that Hieber was not required to insure the Farm for the benefit of Krieg, the life tenant, its judgment is contrary to law, on these facts.

Because Krieg changed his prayer for relief at trial, we remand this case to the trial court to conduct an evidentiary hearing regarding the appropriate amount to compensate Krieg for the value of his reserved life estate. In so doing, the trial court should be guided by our holding that Krieg has a life estate interest—i.e., a right of residency—in the premises. The trial court should also be mindful of the following: (1) that the market value of Krieg's right of residency, at the time the parties executed the Purchase Agreement, was calculated by Krieg to be approximately $48,000.00, i.e., the appraised value of the property less the purchase price; (2) Krieg's life expectancy in 1999; and (3) that Krieg resided in the premises for approximately one year before the fire.

For the foregoing reasons, we reverse the trial court's judgment in favor of Hieber and remand for proceedings consistent with this opinion.

Reversed and remanded.

RILEY and DARDEN, JJ., concur.