**FILED**

Sep 11 2019, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Daniel L. Taylor
J. Kent Minnette
Taylor, Chadd, Minnette, Schneider &
Clutter, P.C.
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEES

E. Scott Treadway
Raymond J. Biederman
Mattingly Burke Cohen &
Biederman LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas K. Downs and Laura H. Downs, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Stephen S. Radentz and Magdalena B. Czader, <br><br> *Appellees-Plaintiffs.* | September 11, 2019 <br><br> Court of Appeals Case No. 19A-PL-382 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1711-PL-1443 |

**Najam, Judge.**

## Statement of the Case

Thomas and Laura Downs (collectively "Sellers") appeal the trial court's judgment in favor of Stephen Radentz and Magdalena Czader (collectively

"Buyers") on Buyers' complaint seeking specific performance of the parties' agreement for the sale of real estate. Sellers present two issues for our review:

1.      Whether the trial court erred when it applied the parol evidence rule and excluded certain evidence at trial.

2.      Whether the trial court's finding that the parties entered into a valid and enforceable settlement agreement is clearly erroneous.

Buyers cross appeal and ask that we award them appellate attorney's fees.

We affirm and remand with instructions.

## Facts and Procedural History

On September 5, 2017, Sellers listed for sale their residence located on ten acres in Zionsville ("the property"). On September 18, Buyers made an offer to purchase the property. After the parties proposed offers and counter-offers, they agreed on a purchase price of $1.2 million and executed a purchase agreement. However, following disagreements regarding inspections and appraisals, on November 27, Buyers filed with the trial court a complaint for specific performance. Over the course of the next several months, the parties negotiated a settlement agreement, which Sellers executed on August 12, 2018.

The settlement agreement incorporated by reference the parties' purchase agreement, which required in relevant part that Sellers provide a survey "certified as of a current date" and that was "reasonably satisfactory to Buyer." Appellees' App. Vol. 2 at 45. On August 16, before Buyers had executed the

settlement agreement, Sellers' attorney sent Buyers' attorney a letter stating in relevant part as follows: "*Pursuant to the Settlement Agreement*, please find enclosed the original Anderson and Associates survey of the [property from 1996] along with a copy of the original title policy." Defendants' Ex. C (emphasis added).

[6] In response to that letter, Buyers informed Sellers that the 1996 survey was not acceptable and did not comply with the terms of the purchase agreement. On August 20, after Sellers had refused to provide a different survey, Buyers' attorney sent an email to Sellers' attorney's office stating:

> My client[s] are precariously close to walking away from the settlement. We expect a current survey of the property. The documents provided were decades old and of little value to us or the title company.
>
> Please advise by the close of business today whether we can expect a current survey. Otherwise, let's move forward with the litigation.

Defendants' Ex. D. In particular, Buyers requested a current "ALTA"[1] survey of the property. Tr. at 98.

[7] Despite not having received a current survey of the property, Buyers executed the settlement agreement on August 30. Still, Sellers refused to permit Buyers access to the property to perform inspections or appraisals. On September 30,

---

[1] "ALTA" stands for American Land Title Association.

Buyers filed with the trial court a motion to enforce the settlement agreement. Following an evidentiary hearing, the trial court entered judgment for Buyers and found and concluded as follows:

3. [Buyers] substantially performed or offered to perform their contract obligations in relation to the Purchase Agreement. The undisputed testimony from [Radentz], Barbara Ward, broker for [Buyers], and Robbin Edwards, broker for [Sellers], was that the [Buyers] fulfilled all conditions precedent under the Purchase Agreement.

4. [Sellers] breached the Purchase Agreement by failing to satisfy the terms of the same.

* * *

11. [Buyers] and [Sellers] entered into a written Settlement and Release Agreement, dated August 30, 2018 (the "Settlement Agreement"). . . .

12. The Settlement Agreement was executed by [Sellers] on August 12, 2018, and executed by [Buyers] on August 30, 2018.

13. [Sellers] each testified, and the Court finds, that [Sellers] knowingly and voluntarily executed the Settlement Agreement.

14. [Sellers] each testified, and the Court finds, that [Sellers] were represented by legal counsel during the negotiation and preparation of the Settlement Agreement.

15. [Sellers] each testified, and the Court finds, that [Sellers] intended to be bound by the terms and conditions of the Settlement Agreement.

16. [Sellers] each testified, and the Court finds, that [Sellers] did not revoke[] or withdraw the Settlement Agreement prior to written acceptance by [Buyers] on August 30, 2018.

17. The Settlement Agreement contained the following provisions:

> 17. The Parties acknowledge that (1) they have read and considered this Agreement carefully; (2) that it was negotiated at arm's length by Parties of equal bargaining power; (3) that they had the opportunity to have their attorneys negotiate this Agreement and to discuss such Agreement in detail with their attorneys, but elected, in their sole discretion, not to do so; (4) *that they have been given a reasonable period of time (as long as they deemed necessary) to consider this Agreement before signing*; (5) that they fully understand the extent and impact of its provisions; . . .

> 18. This Agreement has no terms other than those expressly set forth herein. Each Party to this Agreement represents and warrants to the other Party that it is not signing this Agreement in reliance upon any term, representation or warranty other than those expressly set forth in this Agreement. This Agreement shall not be modified in any respect except by a writing executed by both Parties.

19.[sic] Multiple undisputed witnesses, including both parties' real property brokers, testified and the Court finds [Buyers] fully complied with the terms of the Settlement Agreement, including attempting to perform required inspections.

20. The undisputed evidence also established [Sellers] breached the Settlement Agreement on multiple occasions, including refusing to allow access to the Property, refusing to reschedule inspections, refusing to provide a current survey, and refusing to

pay attorneys' fees, all of which are required by the terms of the Settlement Agreement.

21. The Court finds the Settlement Agreement is unambiguous.

* * *

23. The Court finds the Settlement Agreement is valid and enforceable.

Appellants' App. Vol. 2 at 11-13 (emphasis added).[2] The trial court then entered judgment in favor of Buyers and ordered Sellers to comply with the agreement. The trial court also ordered Sellers to pay Buyers' attorney's fees and "additional damages," to be determined at a future hearing. *Id.* at 15. Accordingly, this appeal is not from a final judgment, as Sellers assert in their notice of appeal. Rather, this is an interlocutory appeal of right under Indiana Appellate Rule 14(A)(4). This appeal ensued.

---

[2] In a footnote, the trial court added:

> This is the essential problem with [Sellers'] case. Mr. Downs told the court, essentially, that he felt [B]uyers behaved in a bullying fashion between the date he and Laura Downs signed [on] August 12, 2018, and when [Buyers] ultimately signed. If [B]uyers did that, they created a risk for themselves that the settlement agreement, signed only by [Sellers] at that point might be revoked. A proper revocation would have been in writing after August 12, 2018, but delivered to [B]uyers before [B]uyers signed their acceptance—something they ultimately did on August 30, 2018. [Buyers], by signing, made a mirror acceptance of the Downs' written offer before it was revoked. Once an offer is made there is a race to either accept it and bind the deal or to revoke it and thereby avoid being bound. The settlement agreement is enforceable. [B]uyers won the race.

Appellants' App. Vol. 2 at 12.

# Discussion and Decision

## *Issue One:  Parol Evidence*

[8]     Sellers contend that the trial court erred when it excluded from the evidence at trial an email from Sellers' attorney dated August 9, 2018.  They maintain that this issue turns on the construction of the parol evidence rule, not its application to any particular set of facts, and that our review is *de novo*.  *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 277 (Ind. 2003).  Sellers' argument is two-fold.  Sellers first assert that the email was admissible as an exception to the parol evidence rule because it shows that no contract was ever formed.  Sellers also assert that the email was admissible because it is relevant to the issue of whether the settlement agreement was only partially or completely integrated.  We address each contention in turn.

[9]     Initially, we note that Sellers were bound by the terms of the settlement agreement when they executed it on August 12.  Appellants' Br. at 5.  As this Court has held,

> [i]n situations where fewer than all the proposed parties execute [a] document we look to the intent of the parties as determined by the language of the contract to determine who may be liable under the agreement.  It should be assumed that all the parties who sign [a contract] are bound by it unless it affirmatively appears that they did not intend to be bound unless others also signed.

*Kruse Classic Auction, Co. v. Aetna Cas. & Sur. Co.*, 511 N.E.2d 326, 328 (Ind. Ct. App. 1987), *trans. denied*; *see also Int'l Creative Mgmt., Inc. v. D & R Ent. Co.*, 670

N.E.2d 1305, 1311 (Ind. Ct. App. 1996), *trans. denied*. And here, "there was no express intention or affirmation in the contract that [Sellers] not be bound unless [Buyers] also signed." *See Kruse Classic Auction*, 511 N.E.2d at 328. Accordingly, when they executed the settlement agreement on August 12, Sellers were bound by it, including the provision that gave Buyers "a reasonable period of time (as long as they deemed necessary) to consider this agreement before signing." Appellees' App. Vol. 2 at 40. Once executed by Sellers, the settlement agreement was, in effect, an offer to Buyers, which, as the trial court found, Buyers had accepted before the offer was revoked. *See Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 435 (Ind. 1993) (stating a contract is formed by the exchange of an offer and acceptance between the contracting parties. To form a contract, one party must extend an offer, and the other party must communicate acceptance of the offer to the offeror).

## Contract Formation

[10] In general, where, as here, the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *Krieg v. Hieber*, 802 N.E.2d 938, 943 (Ind. Ct. App. 2004). However, the prohibition against the use of parol evidence is by no means complete. *Id.* at 944. Indeed, parol evidence may be considered if it is not being offered to vary the terms of the written contract but to show that fraud, intentional

misrepresentation, or mistake entered into the formation of a contract. *Id.* In addition, parol evidence may be considered to apply the terms of a contract to its subject matter and to shed light upon the circumstances under which the parties entered into the written contract. *Id.*

[11] Here, during the evidentiary hearing, Sellers attempted to introduce into evidence an email from their attorney to Buyers' attorney dated August 9, 2018, which stated as follows:

> My clients have reviewed the modifications to the Settlement Agreement made by your clients. The modification made in paragraph 4 is unacceptable. My clients will not agree to any modification of the closing date or post-closing possession. However, we have made the modification requested in paragraph 7. My clients have advised me the[y] will not consider any further modifications. *If the Settlement Agreement is not fully executed by the close of business on Monday, August 13, 2018, I have been instructed to proceed with the litigation.*

Defendants' Ex. B (emphasis added). Buyers objected to that proffered evidence on the ground that it violated the parol evidence rule.

[12] Sellers' attorney responded that the email was admissible under one or more of the several exceptions to the parol evidence rule, and he made two offers of proof—one during Radentz' testimony and one during Thomas' testimony. In his offers of proof, Sellers' attorney stated that, "if admitted this exhibit would show by its very nature that the settlement agreement, if it was not fully executed by the close of business on Monday, August 13, [I had] been instructed to proceed with th[e] litigation[.]" Tr. at 70. In short, Sellers argued

to the trial court that the email proved that, because Buyers did not execute the settlement agreement by August 13, 2018, there was no timely "acceptance" of their offer and no contract was formed. *Id.* Thus, Sellers asserted that the email was admissible as an exception to the parol evidence rule because it "shed light upon the circumstances under which the parties entered into the written contract." *See Krieg*, 802 N.E.2d at 944.

[13] On appeal, Sellers contend that, when it excluded the email from the evidence, the trial court misapplied the parol evidence rule. Sellers cite our opinion in *Sho-Pro of Ind., Inc. v. Brown*, 585 N.E.2d 1357, 1360 (Ind. Ct. App. 1992), for the principle that the parol evidence rule presumes a valid written agreement between the parties and for its holding that the rule does not operate to exclude evidence of contract formation. But Sellers' reliance on *Sho-Pro* is misplaced. In *Sho-Pro*, we concluded that the parol evidence rule did not apply *both* because "[n]o evidence was introduced . . . purporting to vary the terms of the written document offered" *and* because "the question was whether there was a meeting of the minds between the parties." *Id.*

[14] Here, unlike in *Sho-Pro*, the proffered evidence purported to vary a specific term of the settlement agreement. The August 9 email attempted to establish an abbreviated deadline for Buyers to execute the settlement agreement, which directly contradicted the provision in the agreement that gave Buyers "a reasonable period of time (as long as they deemed necessary) to consider this agreement before signing." Appellants' App. Vol. 2 at 12. Thus, while Sellers contend that the August 9 email was offered to show that no contract was

formed, the email was a clear attempt to vary an express provision of the settlement agreement and, as such, it was inadmissible under the parol evidence rule. *Krieg*, 802 N.E.2d at 944.

In sum, the settlement agreement had been formed and by its terms included "no terms other than those expressly set forth" in it. Appellants' App. Vol. 2 at 13. Sellers could not foist a different deadline term upon Buyers when the agreement provided that it "shall not be modified in any respect except by a writing executed by both Parties." *Id.* Sellers had already signed and were bound by the agreement, *Kruse Classic Auction, Co.*, 511 N.E.2d at 328, and Buyers executed the agreement within the time specified by its terms. The trial court did not err when it excluded the email from the evidence.

### *Partial or Complete Integration*

Still, Sellers assert that, if the trial court excluded the email "based on the purported agreement's merger or integration clause," that was erroneous because our Supreme Court has held that "the question of partial or complete integration 'requires the court to hear all relevant evidence, parol or written.'" Appellant's Br. at 14 (quoting *Franklin v. White*, 493 N.E.2d 161, 167 (Ind. 1986)). In essence, Sellers suggest that *all* parol evidence is admissible to show whether the parties intended the settlement agreement to be only partially integrated or completely integrated. We cannot agree.

In *Franklin*, the Court held that

"[a] merger (integration) clause does not control the question of whether a writing was intended to be a completely integrated agreement." An integration clause is only some evidence of the parties' intentions. The trial court should consider an integration clause along with all other *relevant* evidence on the question of integration.

493 N.E.2d at 166 (citations omitted, emphasis added). The Court added that, "[i]f the court determines that a writing is integrated as to a specific term, then prior statements or negotiations of the parties which would tend to contradict that term as it appears in their final written expression are *simply irrelevant*." *Franklin*, 493 N.E.2d at 167 (emphasis added).

[18] Here, Sellers do not explain how the August 9 email is relevant to the issue of whether the parties intended that the settlement agreement constituted "the final and complete agreement between" them. *Id.* (citation omitted). Moreover, again, the purported August 13 deadline for Buyers to execute the settlement agreement directly contradicted the provision in the settlement agreement stating that the parties had "a reasonable period of time (as long as they deemed necessary) to consider this agreement before signing." Appellees' App. Vol. 2 at 40. On its face the deadline for the parties' execution of the agreement was clearly stated and fully integrated in the document signed by Sellers. Thus, on that specific term, the August 9 email was irrelevant to a determination of whether the agreement was partially or completely integrated, and the trial court did not err when it excluded it from the evidence. *Franklin* 493 N.E.2d at 167.

*Harmless Error*

[19] In any event, it is well settled that, even if an evidentiary decision was erroneous, we will not reverse if the ruling constituted harmless error. *Techna-Fit, Inc. v. Fluid Trans. Prods., Inc.*, 45 N.E.3d 399, 411 (Ind. Ct. App. 2015). An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the factfinder, in light of all the evidence presented, is sufficiently minor so as not to affect a party's substantial rights. *Id.*; Ind. Appellate Rule 66(A).

[20] Here, while on direct examination Thomas Downs testified he believed that August 13 was the deadline for Buyers to accept Sellers' offer, Thomas also testified, in effect, that the sale was still pending after August 13. In particular, on redirect examination Thomas testified that Buyers' agent had issued "ultimatums" on August 20 and 29, whereby Buyers had threatened that "the transaction [wa]s over" if Sellers did not "do something by midnight" on each of those dates. Tr. at 114. If, as Sellers contend on appeal, there was no sale pending because Buyers had not executed the settlement agreement by August 13, then the subsequent ultimatums issued by Buyers would have been of no consequence or concern to Sellers. But, rather than simply testifying that, in his view, there was no sale pending after August 13, Thomas testified he "believed that the deal was dead because of" Buyers' ultimatums, which occurred after that date. *Id.*

[21] Further, Sellers' conduct shows that, notwithstanding the purported August 13 deadline, Sellers believed that the settlement agreement was still viable. The

clearest evidence of that fact is the August 16 letter from Sellers' attorney to Buyers' attorney stating, "*Pursuant to the Settlement Agreement*, please find enclosed" the 1996 survey of the property and thanking him for his "cooperation." Defendants' Ex. C (emphasis added). Sellers would have had no reason to send Buyers a survey on August 16 if their offer of the settlement agreement had expired on August 13.

[22] Finally, Laura Downs testified that she was always ready, willing, and able to sell the property to Buyers. Laura was apparently unaware of any deadline or ultimatum, other than a reasonable time, as stated in the settlement agreement, for Buyers to execute the settlement agreement. And at no time after August 13 did Sellers revoke their offer to Buyers.

[23] In sum, the evidence, including Thomas' testimony on redirect examination, shows that Sellers did not consider their offer of the settlement agreement to have expired after August 13, and Sellers had not revoked their offer before Buyers executed the settlement agreement on August 30. At most, the August 9 email threat from Sellers' attorney to "proceed with this litigation" was a threat which neither Sellers nor Buyers took seriously at that time. Whatever its evidentiary value may have been, the email was vitiated by the subsequent conduct of the parties. If there were error in the exclusion of the email, it was harmless.

## *Issue Two: Enforceable Settlement Agreement*

[24]     Sellers next contend that the evidence does not support the trial court's "finding that the parties entered into a valid and enforceable settlement agreement[.]" Appellants' Br. at 14. The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). This court has outlined the standard of review when the trial court has issued such findings and conclusions:

> In reviewing a judgment based on such findings, we must first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Atterholt v. Robinson*, 872 N.E.2d 633, 638-39 (Ind. Ct. App. 2007). "[T]he court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Randles v. Ind. Patient's Comp. Fund*, 860 N.E.2d 1212, 1219 (Ind. Ct. App. 2007) (citation omitted), *trans. denied*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Johnson v. Wysocki*, 990 N.E.2d 456, 460 (Ind. 2013). "In either case, we must be left with the firm conviction that a mistake has been made." *Id.* (citation and internal quotation marks omitted). When the specific issue on appeal relates to the award of damages, we will affirm the damage award if it was "within the scope of the evidence before the trial court." *Smith v. Washington*, 734 N.E.2d 548, 550 (Ind. 2000). In conducting our review, we consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. *Samples v. Wilson*, 12 N.E.3d 946, 950 (Ind. Ct. App. 2014). We do not reweigh the evidence. *Id.*

*Green v. Robertson*, 56 N.E.3d 682, 691 (Ind. Ct. App. 2016).

[25] Sellers first assert that Buyers' "purported settlement agreement acceptance on 30 August 2018 did not satisfy Indiana's mirror image rule[.]" Appellants' Br. at 15. It is well settled that in order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1034 (Ind. Ct. App. 1998), *trans. denied*. This rule is called the "mirror image rule." *Id.* An acceptance which varies the terms of the offer is considered a rejection and operates as a counteroffer, which may be then accepted by the original offeror. *Id.* at 1035.

[26] Sellers maintain that, when Buyers rejected the 1996 survey Sellers provided on August 16, "this communication was deemed a counteroffer, because it proposed additional terms from [Sellers'] purported offer" in the settlement agreement. Appellants' Br. at 16. Sellers state that, "[e]ven if a valid offer, nothing in [Sellers'] 12 August 2018 communication to [Buyers] required [Sellers] to give [Buyers] an 'ALTA' survey[,]" as Buyers had requested. *Id.* Sellers' argument on this issue misses the mark. The parties' purchase agreement, which was incorporated by reference in the settlement agreement, clearly states that Sellers would provide a survey "certified as of a current date" and that is "reasonably satisfactory to Buyer." Appellees' App. Vol. 2 at 45. Buyers rejected the 1996 survey provided by Sellers because it was not certified as of a current date, and they requested an ALTA survey, which is consistent with the provision that the survey be "reasonably satisfactory" to Buyers. Thus,

nothing about Buyers' demands regarding the survey constituted a "counteroffer" or otherwise sought to alter the terms of the proposed settlement agreement.

[27]  As the trial court found, on August 30, Buyers executed the same settlement agreement that Sellers had executed on August 12. Indeed, Sellers each testified that Buyers executed the same agreement that they had executed. Accordingly, the settlement agreement satisfies the mirror image rule.[3]

[28]  Finally, Sellers assert that the "Statute of Frauds[4] precludes enforcement of the purported settlement agreement, because [Sellers'] signatures of 12 August 2018 were not valid when [Buyers] signed on 30 August 2018." Appellants' Br. at 19. Sellers appear to argue that when Buyers demanded an ALTA survey certified as of a current date, Buyers "rejected" the settlement agreement, which, in turn, "extinguished" Sellers' signatures on the settlement agreement. *Id.* at 20. Again, Sellers' contention misses the mark. Buyers did not reject the settlement agreement when they requested a survey that was consistent with the terms of the parties' purchase agreement. Sellers have not demonstrated that the settlement agreement violates the statute of frauds.

---

[3] We reject Sellers' suggestion that, because Sellers rejected Buyers' proposed settlement agreement dated August 9, 2018, the parties have no valid settlement agreement. That proposed settlement agreement, which was rejected, is not at issue here.

[4] The statute of frauds provides in relevant part that a person may not bring an action regarding a contract for the sale of real property unless the contract is in writing and signed by the party against whom the action is taken. Ind. Code § 32-21-1-1(b)(4) (2019).

### Cross appeal

Finally, Buyers cross appeal and ask that we award them appellate attorney's fees pursuant to the attorney's fee provision in the settlement agreement. In particular, the settlement agreement provides that Sellers "shall also issue a credit to [Buyers] for any outstanding attorneys' fees incurred between the Effective Date and Closing." Appellee's App. Vol. 2 at 38-39. The settlement agreement also provides, generally, that if "any party is required to pursue legal action to enforce their [sic] rights under this Agreement, the prevailing party in such action shall be entitled to recover their [sic] attorneys' fees and costs." *Id.* at 41. We hold that Sellers shall pay Buyers' appellate attorney's fees, and we remand to the trial court with instructions to determine the amount of those fees.[5]

### Conclusion

The trial court did not err when it excluded from the evidence the August 9 email from Sellers' attorney to Buyers' attorney. Further, even if the exclusion of that evidence were error, it was harmless. The overwhelming and undisputed evidence shows that Sellers' offer of the settlement agreement remained in effect until Buyers executed the settlement agreement on August 30. Sellers tendered a survey to Buyers on August 16, "pursuant to the

---

[5] Buyers also request that, in addition to appellate attorney's fees, we award them "all attorney's fees incurred from the date of the settlement agreement to and until closing." Appellees' Br. at 31. But the trial court's order already awards Buyers all such fees other than appellate attorney's fees, and that order was not challenged on appeal.

settlement agreement," which belied any notion that Sellers considered that the sale was off. The evidence supports the trial court's finding that the settlement agreement is valid and enforceable. And Buyers are entitled to an award of appellate attorney's fees from Sellers in an amount to be determined by the trial court on remand.

[31] Affirmed and remanded with instructions.

Bailey, J., and May, J., concur.