**H & G ORTHO, INC., and Harold Canada, and Gladys Canada, (Defendants, Counter-claimants & Third Party Plaintiffs) and G & H Wire Company, Inc., Appellants–Defendants,**

v.

**NEODONTICS INTERNATIONAL, INC., d/b/a G & H Wire Company, (Plaintiff, Counterclaim Defendant & Third Party Defendant), and R. Michael Jahns, Individually (Counterclaim Defendant & Third Party Defendant), Appellees–Plaintiffs.**

No. 41A05–0406–CV–336.

Court of Appeals of Indiana.

March 9, 2005.

See also 823 N.E.2d 718.

Todd A. Richardson, Matthew S. Tarkington, Lewis & Kappes, Indianapolis, IN, Attorneys for Appellants.

Edward F. Schrager, Steve M. Crell, Cohen Garelick & Glazier, P.C., Arthur R. Baxter, Jr., Baxter James & Rose LLP, Indianapolis, IN, Stephen Lee Huddleston, Franklin, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

This is the second appeal that we decide today involving the same parties and related issues that arose from the same cause of action. In the first appeal—*H & G Ortho, Inc., et al. v. Neodontics Int'l, Inc., et al.*, 823 N.E.2d 718, No. 41A05–0401–CV–59 (Ind.Ct.App. Mar. 9, 2005) (hereinafter referred to as *H̄ & G I* )—we were called upon to resolve, among other things, whether the trial court's award of damages for breach of contract and the issuance of an injunction were proper with regard to a party's alleged breach of a covenant not to compete.

In this appeal, the appellants-defendants H & G Ortho, Inc., and Harold and Gladys Canada (collectively, the Canadas), and G & H Wire Company, Inc., challenge the trial court's award of $572,689.73 in attorney's fees and litigation costs to the appellees-plaintiffs Neodontics International, Inc., d/b/a G & H Wire Company (Neodontics) and Michael Jahns, individually (collectively referred to as Neodontics), claiming that the award of attorney's fees was excessive, unreasonable and disproportionate to the judgment.[1]

## FACTS

The specific facts of this case are set forth in *H & G I.* Briefly, however, Neodontics was involved in the manufacture, promotion and sale of various orthodontic products. The Canadas own H & G Ortho, Inc., the successor in interest to G & H Wire Company, Inc. (G & H). They were involved in the orthodontics industry for over twenty years and, in 1995, the Canadas sold their company assets to Neodontics and Jahns, and the sale was memorialized in an asset purchase agreement (Agreement). On August 8, 1996, the parties executed an addendum to the Agreement that contained the following components: (a) a non-compete provision; and (b) a provision for consultation services. The Canadas were personally bound by the addendum.

Neodontics eventually filed an action against the Canadas, alleging that they had violated the non-competition provision of the addendum, and the Canadas counterclaimed, alleging that Neodontics had failed to make a required payment under the Agreement. The addendum to the Agreement included the following attorney's fees provision:

In any action brought by the Buyer or the Corporation to enforce the rights arising thereunder, the Buyer and the Corporation shall be entitled to recover from the party violating the covenants their reasonable attorney's fees and costs of this action.

Appellant's App. p. 202. The trial court determined that the Canadas' multiple violations of the non-compete clause of the addendum involving their sale of—orthodontic products-namely 120,630 standard edgewise brackets and some welders resulted in damages of $67,885.10 pursuant to the liquidated damages clause under the Agreement. It was also determined that the Canadas' promotion of their "Focus" bracket, another orthodontics product, constituted either a breach or threatened breach of the addendum, thereby justifying the issuance of a temporary restraining order without notice. The trial court found that the Canadas' breach, which started on February 13, 1997, justified reimbursement to Neodontics of all postbreach installment payments that were made to the Canadas in the amount of $400,000, together with pre-judgment interest. The Canadas took nothing by way of their counterclaim with respect to their contention that an injunction had been wrongfully issued against them. We affirmed the trial court's judgment in all respects in *H & G I.*

Following the judgment on the merits, Neodontics requested attorney's fees and litigation costs from the Canadas in the amount of $762,272.53. At a hearing that was conducted on April 12, 2004, it was established that attorney Edward Schrager had represented Neodontics for nearly ten years, and he represented the compa-

---

**1.** The Canadas did not object at the hearing or advance any argument against Neodon- tics's claim for litigation expenses.

ny during the entire litigation in this case. Tr. p. 20. Arthur Baxter and Stephen Huddleston also were attorneys of record for Neodontics during the litigation. Tr. p. 15–16. Other counsel had been retained for the purposes of performing legal research and rendering advice in their areas of expertise. Inasmuch as Neodontics was a preferred client of Schrager's, the company was charged an hourly rate lower than what Schrager typically charged other clients. Schrager testified that the records used to charge Neodontics reflected the minimum number of hours, and not every minute spent in thought or preparation for the litigation had been billed. It was then established that the legal team for Neodontics devoted 2,842.57 hours in the litigation at various hourly rates prior to the commencement of the hearing on attorney's fees. The total attorney's fees incurred by Neodontics during the litigation just prior to the fee hearing amounted to $506,582.96. Because the work performed in defending Jahns on the Canadas' counterclaim was quite limited and interwoven with legal work that was compensable under the addendum to the Agreement, Neodontics estimated that one percent of its total attorney's fees and costs reflected the work and costs that were related to the representation of Jahns in defending the counterclaim. Hence, the trial court adopted that one percent figure, and reduced the amount of the award accordingly.

Having decided in *H & G I* that the trial court's judgment with respect to the merits was correct, we now address the Canadas' arguments that the attorney fees award to Neodontics was erroneous.

## DISCUSSION AND DECISION

▪ In resolving the issue, we first note that Indiana follows the "American rule," under which each party is ordinarily responsible for paying his or her own legal fees in the absence of a fee-shifting statutory or contractual provision. *Barrington Mgmt. Co. v. Paul E. Draper Family Ltd. P'ship*, 695 N.E.2d 135, 142 (Ind.Ct.App. 1998). Where, as here, an award of fees is premised on a contractual provision, the agreement will be enforceable only in accordance with its terms and only if it does not violate public policy. *Steiner v. Bank One Indiana, N.A.*, 805 N.E.2d 421, 428 (Ind.Ct.App.2004). Also, on appeal from an award of attorney's fees, we apply the clearly erroneous standard to factual determinations, review legal conclusions de novo, and determine whether the decision to award fees and the amount of the award constituted an abuse of the trial court's discretion. *Inlow v. Henderson, Daily, Withrow & Devoe*, 804 N.E.2d 833, 839 (Ind.Ct.App.2004), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind.Ct.App.2004), *trans. denied.*

▪ We further note that a trial court has wide discretion in awarding attorney's fees. The trial court may look to the responsibility of the parties in incurring the attorney's fees, and the trial judge has personal expertise that he or she may use when determining the reasonableness of the fees. *Weiss v. Harper*, 803 N.E.2d 201, 208 (Ind.Ct.App.2003). In determining whether a fee is reasonable, the trial court may consider such factors as the hourly rate that is charged, the result achieved, and the difficulty of the issues that are involved in the litigation. *See Olcott Int'l & Co. v. M.D.B.S.*, 793 N.E.2d 1063, 1079 (Ind.Ct.App.2003), *trans. denied.*

▪ In support of their claim that the attorney's fees awarded to Neodontics cannot stand, the Canadas first contend that

the fee provision embodied in the above-quoted addendum is not applicable because Neodontics did not prevail on each and every one of the issues presented in the litigation. However, contrary to the Canadas' argument, nowhere in the addendum does the word "prevail" appear. Rather, the provision with regard to the payment of attorney's fees pertains to the enforcement of Neodontics's rights under the Agreement. To be sure, Neodontics was successful in every aspect of the prosecution of its claims. Neodontics brought its action to enforce the addendum in the Agreement, and the company showed that the Canadas had violated it. This was enough to trigger the attorney fee provision in the Agreement.

The Canadas, however, point to *Olcott*, a case where an original judgment in the amount of $438,850 was reduced to approximately $5450. *Id.* at 1079. In *Olcott*, because the judgment amount had been reduced, we remanded the cause to the trial court for reconsideration of the attorney fee award. We explained that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 1080.

In this case—unlike the circumstances in *Olcott*—the underlying judgment has not been reduced. To be sure, the trial court decided eleven issues at either the summary judgment stage of the proceedings or at trial. And nine of those issues were resolved in favor of Neodontics. Appellant's App. p. 35–37. The record also reflects that over ninety percent of the motions that Neodontics filed were granted. Appellee's App. p. 242. Neodontics enjoyed success with respect to every motion for summary judgment it filed, and it was successful in defeating every aspect of the Canadas' summary judgment motions. Appellee's App. p. 240–41, 514. Moreover,

but for the Canadas' breach of the Agreement, the temporary restraining order would not have been sought—nor would the complaint for damages have been filed.

The counterclaims filed by the Canadas—all of which were unsuccessful—arose from the same contract and involved the same facts as those presented by Neodontics in support of its claims. Contrary to the view advanced by the Canadas, we do not read *Olcott* such that there must be a strict proportion between the total amount sought and the amount that is eventually recovered. To be sure, the *Olcott* court observed that where a lawsuit consists of related claims, a plaintiff who has won substantial relief "should not have his attorney's fees reduced merely because the court did not adopt every contention raised." *Id.* at 1080. As a result, we reject the Canadas' argument that the trial court should have reduced Neodontics's attorney's fees and costs that were attributable to the counterclaims. Simply put, we find the concept of "proportionate reduction" inapplicable in these circumstances.

■ That said, we now examine the reasonableness of the attorney fee award in this case. At the hearing, J. McNeely, an attorney from Shelbyville, testified that the number of hours for the legal work that Neodontics's counsel performed was very reasonable. McNeely even estimated that the hours were "on the conservative side." Appellee's App. p. 254. McNeely also praised the "quality of the research," and the "effectiveness of [Neodontics's] discovery." Appellee's App. p. 253–54. McNeely had surveyed ten other Indianapolis law firms of various sizes and determined that "a reasonable range of fees in a case of this quality and outcome should be $648,000 on the low end, and $810,000 on the high end." Appellee's App. p. 252.

David Tittle—an expert who testified for the Canadas—acknowledged that the hourly attorney fee rate was reasonable, and he did not disagree that the number of hours devoted to the case by Neodontics's legal counsel was not unreasonable. Appellee's App. p. 262.

In light of this evidence that was presented to the trial court, we cannot say that the award of attorney's fees was clearly erroneous. The evidence presented at the hearing justified the amount of the award as well as its reasonableness. As a result, we find no error.

The judgment of the trial court is affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.