**NUNN LAW OFFICE, Appellant–Petitioner,**

v.

**Peter H. ROSENTHAL, Appellee–Respondent.[1]**

No. 49A05–0809–CV–523.

Court of Appeals of Indiana.

May 4, 2009.

---

1. The instant action regarding attorney's fees arose out of the personal injury action of *Joseph D. Carpenter v. Terry Rosengarten,* also with lower cause number 49D13–0502–CT–7196.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Dean Arnold, Nunn Law Office, Bloomington, IN, Attorneys for Appellant.

Peter H. Rosenthal, Law Office of Peter H. Rosenthal, Indianapolis, IN, Diamond Z. Hirschauer, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Petitioner Nunn Law Office ("Nunn") appeals the trial court's award of $1462.88 in attorney's fees in its petition for division of attorney's fees arising out of Nunn's and Appellee–Respondent attorney Peter Rosenthal's successive representation of Joseph Carpenter in Carpenter's personal injury action against Terry Rosengarten. Upon appeal, Nunn claims that the trial court erred in failing to issue written findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52 and in basing its award upon *quantum meruit* rather than upon Nunn's contingency fee agreement with Carpenter. We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 3, 2004, Joseph Carpenter was involved in a motor vehicle accident with Terry Rosengarten in which Carpenter sustained injuries to his person. On May 17, 2004, Carpenter entered into an agreement with Nunn & Greene Law Office [2] ("Nunn") providing that Nunn would represent him for any of his claims arising out of the accident in exchange for "40% of all amounts recovered or offered." Plaintiff's Exh. 2. On October 27, 2004, Nunn, on behalf of Carpenter, sent a demand package to Rosengarten's insurer, Grange Insurance. In December of 2004, Grange Insurance made an oral settlement offer of $24,000 to Nunn. Carpenter rejected the offer, and Nunn initiated a lawsuit against Rosengarten on Carpenter's behalf on February 25, 2005.

On May 1, 2005, Carpenter discharged Nunn, and in late June of 2005, hired Peter H. Rosenthal to represent him instead. In April of 2006, Carpenter, represented by Rosenthal, received and accepted a settlement offer of $42,500. A portion of that settlement, specifically $15,500, constituted Rosenthal's attorney's fees.

On May 4, 2006, Rosenthal wrote a letter to Nunn indicating that Carpenter's case had been settled. Rosenthal's letter anticipated expenses for which Nunn should receive reimbursement and requested from Nunn an itemization of work

---

**2.** Nunn Law Office was formerly named Nunn & Greene Law Office.

performed for purposes of Nunn's compensation for attorney's fees. On October 20, 2006, Nunn moved to reopen Carpenter's case for purposes of determining proper division of attorney's fees.

The trial court held hearings on October 26, 2007 and June 16, 2008, at the conclusion of which it orally calculated judgment in favor of Nunn in the amount of $1462.88. This calculation was determined according to the trial court's assessment, based upon *quantum meruit*, of fair compensation for Nunn's work on Carpenter's case.

Prior to the October 26, 2007 hearing, Nunn had filed a Motion for Special Findings of Fact and Conclusions of Law, and counsel for Nunn reiterated this request following the court's oral calculation of judgment. The trial court acknowledged having overlooked Nunn's motion and set a date for submission of proposed findings and conclusions. Rosenthal indicated that, with the court's permission, he would not submit proposed findings. On July 1, 2008, Nunn submitted proposed findings and conclusions, including the proposed conclusion that its fee should be assessed according to the forty-percent contingency fee agreement. On July 14, 2008, the trial court, without entering written findings and conclusions, entered a general judgment for Nunn in the amount of $1462.88.

## DISCUSSION AND DECISION[3]

### I. Standard of Review

■■■ On appeal from an award of attorney's fees, this court applies the "clearly erroneous" standard to factual determinations, reviews legal conclusions de novo, and determines whether the amount of a particular award constituted an abuse of the trial court's discretion. *See H & G Ortho, Inc. v. Neodontics Int'l, Inc.*, 823 N.E.2d 734, 737 (Ind.Ct.App.2005). *See also Emergency Physicians of Indpls. v. Pettit*, 714 N.E.2d 1111, 1115 (Ind.Ct.App. 1999), *trans. granted and adopted in pertinent part*, 718 N.E.2d 753, 757 (Ind.1999) (articulating above multi-step standard of review for award of attorney's fees in cases of frivolous lawsuit or bad-faith litigation). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *H & G Ortho, Inc.*, 823 N.E.2d at 737. A trial court has wide discretion in awarding attorney's fees. *Id.* The trial court may look to the responsibility of the parties in incurring the attorney's fees, and the trial judge has personal expertise that he or she may use when determining the reasonableness of the fees. *Id.*

### II. Findings and Conclusions

#### A. Written Form

Upon appeal, Nunn first claims that the trial court erred as a matter of law in entering a general judgment rather than issuing written findings and conclusions. Nunn relies upon *Carmichael v. Siegel*, 670 N.E.2d 890, 891 (Ind.1996), wherein the Supreme Court held, based upon the "clear, mandatory language" of Trial Rule 52(A), that "a trial judge is not free to ignore a timely, written request for special findings." Nunn additionally relies upon *McGinley–Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind.1994), which provides that the purpose of special findings under Rule 52(A) is to provide the parties and the reviewing courts with the trial judge's the-ory supporting its ultimate conclusions, and to aid the appellate process of review and advocacy.

---

3. We held oral argument in this case on April 7, 2009, and wish to thank counsel for their

ory of the case in order to effectively preserve the right of review for error.

Rule 52(A) provides, in pertinent part, as follows:

In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury ... shall find the facts specially and state its conclusions thereon.

In evaluating the proper format for Rule 52(A) findings and conclusions, we first observe that the Indiana Supreme Court has emphasized their formal nature. In the small claims case of *Bowman v. Kitchel,* 644 N.E.2d 878, 879 (Ind.1995), the Supreme Court overturned a determination by this court that Rule 52(A) findings and conclusions must be in writing, but it based its holding on the inapplicability of Rule 52(A) to small claims proceedings rather than on any suggestion that Rule 52(A) findings and conclusions should be made orally. Indeed, in articulating the purpose of Rule 52(A), the *Bowman* court emphasized the formality of its requirements, indicated that Rule 52(A) established "a particularized statement for examination on appeal," and distinguished small claims rulings by concluding that they did not warrant the "crafted detailed findings" provided for in Rule 52(A). *Id.* The Supreme Court's reasoning, emphasizing the formality of findings and conclusions and their purpose of facilitating appellate review through a "crafted" particularized statement, suggests that the preferred format for findings and conclusions is that they be in written form.

## B. Oral Form

### 1. Permissibility

In spite of this preferred format, we nevertheless conclude that a trial court's failure to issue findings and conclusions in written form, in and of itself, does not constitute reversible error. Significantly, the plain language of Rule 52(A) does not require that the findings and conclusions be in writing. While the rule specifies that a request for findings and conclusions must be in writing, it imposes no similar writing requirement upon the trial court in issuing these findings and conclusions. Furthermore, the purpose of Rule 52(A) is to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order that the right of review for error may be effectively preserved. *Carmichael,* 670 N.E.2d at 891. We conclude that oral findings and conclusions can achieve this purpose so long as they are thoroughly detailed in the record.

Our conclusion on this point is supported by the Civil Code Study Commission's Comment on Rule 52(A) which reads, in pertinent part, that Rule 52(A) "does not eliminate the possibility that the facts may be found orally in open court and entered by the judge or the court reporter as evidence or other matters are put in the record." 3 William F. Harvey, Indiana Practice: *Rules of Procedure Annotated* § 52, at 587 (3d ed.2002); *see also State ex rel. Harp v. Vanderburgh Circuit Court,* 227 Ind. 353, 360, 85 N.E.2d 254, 257 (1949) (indicating Indiana Supreme Court's endorsement of a trial judge's oral announcement of its findings in open court).[4]

---

4. *Harp* predates the adoption of the Trial Rules in 1970, so it is not an interpretation of Rule 52(A). Interestingly, however, Rule 52(A)'s predecessor statute, Bums' Ind. Stat. § 2–2102, which was presumably applicable

Our conclusion is further supported by other jurisdictions' treatment of oral findings and conclusions. The Seventh Circuit has interpreted Federal Rule of Civil Procedure 52(a), which is similar in many respects to Trial Rule 52(A), to permit oral findings and conclusions. *See Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308 (7th Cir.1985); *see also Fin. Servs. Corp. of Midwest v. Weindruch,* 764 F.2d 197, 198 (7th Cir.1985). Of course FRCP 52(a) explicitly provides for oral findings and conclusions, so it is unremarkable that the Seventh Circuit, and other jurisdictions with similar versions of Rule 52(a), have deemed oral findings and conclusions permissible. *See Bender v. Williams,* 848 A.2d 590, 591 (D.C.2004); *In re Marriage of Nies and Cooper,* 315 Mont. 260, 68 P.3d 697, 699–700 (2000); *Romanyshyn v. Fredericks,* 597 N.W.2d 420, 421–22 (N.D.1999); and *Stonehocker v. Stonehocker,* 176 P.3d 476, 482 (Utah Ct.App.2008). Yet certain other jurisdictions, which like Indiana do not explicitly provide for oral findings and conclusions in their versions of Rule 52(a), have nevertheless interpreted their rules to permit oral findings and conclusions. *See Noey v. Bledsoe,* 978 P.2d 1264, 1275–76 (Alaska 1999); *Colo. Kenworth, Inc. v. Huntley,* 537 P.2d 1087, 1089 (Colo.Ct.App. 1975). Indeed, our research reveals that except in cases involving findings and conclusions where the rules *require* that they be written, *see Foster–Gross v. Puente,* 656 A.2d 733, 737 (D.C.1995) (rejecting oral findings based upon local Domestic Rela-

tions Rule 52(a) requiring written findings and conclusions), there is little if any authority supporting Nunn's contention that oral findings and conclusions are *per se* invalid. Accordingly, we conclude that the trial court did not err as a matter of law in entering oral findings and conclusions in the instant case.[5]

### 2. Adequacy

The question remains, therefore, whether the basis for the $1462.88 judgment was apparent from the trial court's oral explanation in the record. We conclude that it was. In announcing judgment the trial court found that Nunn's attorney, Dean Arnold, had spent three hours on Carpenter's case at a rate of what the court concluded should be $250 per hour[6] due to his experience, for a total of $750; that Nunn's staff had spent nine hours on the complaint and demand package, and five hours in phone calls (twenty-five calls at an average of .2 hour per call), at a rate of $45 per hour, for a total of what the court concluded was $675 ($450[7] + $225); and that Rosenthal still owed Nunn $37.88 of the $253.01 in costs and expenses. Accordingly, the court calculated Nunn's attorney's fees amounted to $1462.88. Although the trial court revised some of its findings while making calculations in the record, the basis for the trial court's calculations and judgment are fully apparent.

---

to *Harp,* required *written* findings and conclusions.

**5.** We are particularly persuaded that oral findings and conclusions are permissible given the Supreme Court's view, with respect to sentencing statements in criminal cases, that a trial court's findings and conclusions may be discerned by examining the oral sentencing statement alongside the written statement. *McElroy v. State,* 865 N.E.2d 584, 589 (Ind. 2007).

**6.** The parties agreed that the court's use of a $250 hourly rate for an experienced plaintiff's lawyer and a $45 hourly rate for the lawyer's staff was reasonable.

**7.** In appears that the court miscalculated the value of nine staff hours at $45 per hour, which equals $405 rather than $450. Of course, this miscalculation, which overvalues Nunn's staff's services, is in Nunn's favor.

Nunn additionally challenges the adequacy of the trial court's findings and conclusions on the grounds that they failed to justify the use of *quantum meruit* as the basis for the calculation of fees. Noticeably, the focus of the hearings was largely upon ascertaining the amount of time Nunn spent on Carpenter's case, demonstrating that the understood method for dividing fees involved *quantum meruit* rather than the terms of the contingency-fee agreement.[8] Furthermore, Nunn voiced no objection to Rosenthal's reference to *quantum meruit* or to the court's calculation of fees on this basis. In any event, any error in the trial court's failure to justify its use of *quantum meruit* as the proper measure for the determination of fees is harmless given our conclusion, as explained below, that this was the only proper measure for the fee determination in the instant case.

### III. *Quantum Meruit*

#### A. Applicability

■ Nunn argues that the trial court erred in assessing fees on *quantum meruit* grounds rather than upon Nunn's forty-percent contingency fee agreement with Carpenter. In cases involving applicable contractual terms, "We assume that an agreement calling for a reasonable method of compensating a discharged lawyer may be enforceable according to its terms." *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 861 (Ind.1999); *see Four Winds, LLC v. Smith & DeBonis, LLC*, 854 N.E.2d 70, 74 (Ind.Ct.App.2006),

*trans. denied* (citing *Galanis* proposition that fee agreement providing for hourly rate in the event of pre-contingency termination is "presumptively enforceable, subject to ordinary requirement of reasonableness.") Accordingly, had Nunn entered into a fee agreement with Carpenter expressly providing for compensation upon discharge, this agreement would be enforceable to the extent it was reasonable. *See Galanis*, 715 N.E.2d at 861.

Here, however, Nunn's contract with Carpenter is silent regarding his compensation upon pre-contingency discharge. To the extent Nunn argues that the provision "40% of all amounts recovered or offered" dictates his payment upon discharge, this provision contradicts the additional term, "If no recovery is obtained, no fee will be paid to my attorney," Plaintiff's Exh. 2, and creates a contractual ambiguity to be construed against the drafter. *See MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind.2004) ("When there is ambiguity in a contract, it is construed against its drafter."). While the "40%" provision arguably permits payment of fees based upon settlements offered, whether or not they are recovered, the latter "no recovery, no fee" provision expressly states to the contrary that fees are not payable unless a recovery is obtained.[9] Accordingly, Nunn's contract, which is either silent with respect to its fee recovery upon discharge or ambiguous and must be construed against Nunn, does not dictate

---

8. The parties do not dispute the accuracy of the court's evaluation of *quantum meruit*, which was largely based upon the standard rate multiplied by the number of hours worked.

9. Contingent fees are usually earned when a judgment is recovered or a settlement is paid. But the Nunn fee agreement provides that, "I agree to pay my attorney 40% of all amounts

recovered or offered." Because of ambiguity in the agreement, we need not decide in this case whether a contingent fee agreement providing that a fee is earned when a settlement offer is received is reasonable, or whether such an agreement would interfere with the client's right to accept or decline a settlement offer.

the proper standard for determining fees under the instant circumstances.

 In the absence of an applicable contractual provision, "The conventional rule is that '[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee.' " *Galanis*, 715 N.E.2d at 861 ((quoting 7 AM. JUR. 2D *Attorneys at Law* § 181 (1997))). Nunn's fees, therefore, are properly based upon *quantum meruit*.

### B. Measure

 Having concluded that Nunn's fees were properly determined according to *quantum meruit*, we further conclude that the trial court's award of $1462.88 in this case did not constitute an abuse of discretion. *See H & G Ortho, Inc.*, 823 N.E.2d at 737. "Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or material furnished if used' by another and if valuable." *Galanis*, 715 N.E.2d at 861 (quoting 17A C.J.S. *Contracts* § 440 at 553 (1963)). "Where there is a successor lawyer, the benefit the client received from the predecessor's work is either retained by the client in the form of obtaining a more favorable fee agreement, or it is transferred to the successor in the form of relieving the successor of the need to expend the same effort." *Id.* at 861–62. In the instant case, if Nunn is not compensated for the work it performed on Carpenter's case, either Carpenter or Rosenthal is unjustly enriched. *See id.* at 862. "The dollar value to offset the unjust enrichment is based on the value conferred on the client, not the effort expended by the

lawyer, although the two may be the same in many instances." *Id.*

 Determining the proper value of the predecessor's services is ultimately a question of fact for the trial court. *Id.* Significantly, the value of a discharged lawyer's work on a case is not always equal to a standard rate multiplied by the number of hours of work on the case. *Id.* " 'In determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney.' " *Id.* (quoting *Kizer v. Davis*, 174 Ind.App. 559, 569, 369 N.E.2d 439, 446 n. 9 (1977) (internal citations omitted)).

The Indiana Rules of Professional Conduct provide guidance for determining the reasonableness of attorney's fees, including the following non-exclusive list of factors to be considered:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Ind. Professional Conduct Rule 1.5(a), *cited in In re Order for Mandate of Funds*, 873 N.E.2d 1043, 1049 (Ind.2007).

Here, following representation by Nunn and Rosenthal, Carpenter received and accepted a $42,500 settlement offer, $15,500 of which constituted attorney's fees. With respect to the value to Carpenter of Nunn's services, the trial court found that Nunn, through Arnold, had spent three hours on the case at the agreed-upon reasonable hourly rate, given his experience, of $250 per hour. The trial court further found that Nunn's staff, who the court concluded had performed the majority of Nunn's work on Carpenter's case with little to no oversight, had spent a total of fourteen hours at the agreed-upon going rate of $45 per hour.[10] The $24,000 settlement offer obtained by Nunn constituted only about fifty-six percent of the $42,500 offer ultimately obtained by Rosenthal. Significantly, Rosenthal spent an undisputed 95.8 hours on the case. Given Nunn's relatively minimal investment of time, specifically attorney time, in Carpenter's case, and Rosenthal's success in obtaining significantly more favorable results, we cannot say that the trial court abused its discretion in awarding Nunn $1462.88 in attorney's fees.

The judgment of the trial court is affirmed.

NAJAM, J., and BARNES, J., concur.

---

10. In addition, the trial court found, and the parties did not dispute, that Rosenthal still owed Nunn $37.88 in costs and expenses, based upon the total $253.01 owed and Rosenthal's prior payment of $215.13.