## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 20 2019, 6:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Daniel L. Lauer
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Daniel J. Borgmann
Helmke Beams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Levendoski, Karen Levendoski, and Kathleen (Jensema) Gross,

*Appellants-Plaintiffs,*

v.

Stanley Stevens,

*Appellee-Defendant.*

August 20, 2019

Court of Appeals Case No.
19A-PL-801

Appeal from the Allen Superior Court

The Honorable Nancy E. Boyer, Judge

Trial Court Cause No.
02D01-1703-PL-119

**Bradford, Judge.**

# Case Summary

[1] Stanley Stevens and Sarah Levendoski purchased a residence ("Wood Moor") together as tenants in common in 2001. They subsequently married but never converted their interests in Wood Moor to anything other than a tenancy in common. When Sarah died in 2008, she was survived by Stanley and three children from a prior relationship, Stephen Levendoski, Karen Levendoski, and Kathleen Gross (collectively, "the Levendoski Children"). Sometime after Sarah's death, Stanley and the Levendoski Children entered into a Family Settlement Agreement ("the Agreement"), in which they agreed, *inter alia*, that each would receive 25% of certain settlement funds, Stanley would waive his entitlement to take against Sarah's will and to seek reimbursement for payment of certain expenses and debts, and the Levendoski Children would waive any right that they might have had to claim any of Sarah's property that was in Stanley's possession.

[2] On March 21, 2017, the Levendoski Children filed a petition for the partition and sale of Wood Moor. Finding that pursuant to the terms of the Agreement, the Levendoski Children had waived their right to claim Sarah's interest in Wood Moor, the trial court granted summary judgment in favor of Stanley. We affirmed the trial court's judgment on appeal. After our decision became certified, Stanley filed a request for attorney's fees. Finding that the claims raised in the Levendoski Children's partition petition were frivolous, the trial court granted Stanley's request and ordered that Stanley was entitled to recover $21,905 in attorney's fees and $126 in costs.

[3]     The Levendoski Children contend on appeal that the trial court abused its discretion by granting Stanley's request for attorney's fees. Alternatively, they challenge the amount of the fees imposed. We affirm.

# Facts and Procedural History

[4]     The underlying facts, as set forth in our decision issued in the parties' first appeal, are as follows:

> Sarah died on March 30, 2008, from mesothelioma complications. She was survived by her husband, Stanley, and the Levendoski Children, who were the product of a prior marriage.
>
> In August 2001, Stanley and Sarah acquired title to a residence (Wood Moor) as tenants in common, as they had not yet married at that time. In June 2002, Stanley and Sarah were married, but never converted their interest in Wood Moor to something other than a tenancy in common.
>
> Sarah's will was executed prior to her marriage to Stanley and named the Levendoski Children as her sole devisees and legatees. At the time of her death, her one-half undivided interest in Wood Moor passed to the Levendoski Children, but they were unaware that the property was owned as a tenancy in common so they did not realize that they held that interest. In May 2008, Stephen probated Sarah's will but did not seek estate administration because her estate was less than the statutory threshold of $50,000. In his closing statement, Stephen stated that there were no debts, liens, or encumbrances against any of Sarah's assets, but in fact, her funeral cost approximately $8,000 and she owed Home Depot approximately $16,000. Stanley paid these debts. If Sarah's estate had covered those costs, it would have been worthless and the Levendoski Children would have taken

nothing, as the value of Sarah's remaining assets totaled approximately $15,000.

Wood Moor remained vacant from the time of Sarah's death to the spring of 2009, when Stanley began to rent it out through an agent. Stanley has continued to pay all obligations related to the property, including mortgage payments, real estate taxes, insurance, repairs, and utilities.

Sometime after Sarah's death, Stanley saw a television ad for a law firm handling class action mesothelioma claims. Stanley called the firm, which also communicated with Stephen. Ultimately, the family received a settlement totaling approximately $160,000.

The Levendoski Children and Stanley opened a new estate for Sarah and, in November 2012, signed [the Agreement] regarding the distribution of the settlement. The Agreement provided that each person would receive 25% of the settlement proceeds. In exchange, Stanley waived any entitlement to reimbursement for his payment of Sarah's funeral expenses and debts, as well as the rights to seek a statutory allowance, one-third interest in Sarah's personal property, or to elect to take against her will. The Levendoski Children, in turn, "hereby forever waive any rights that they may have individually or collectively to claim any of the decedent's property that is in the possession of the Surviving Spouse at the time of the execution of this Agreement." Appellants' App. Vol. III p. 75. The Agreement, which was approved by a trial court in November 2012, is explicitly intended "to compromise and settle all claims, controversies, and disputes existing between or among them in any way arising out of or related to the estate of the Decedent." *Id.*

At some point after the Agreement was executed, Stanley learned the significance of the term "tenants in common" when he attempted to remove Sarah's name from the Wood Moor real estate tax bill. Subsequently, he contacted Stephen regarding

financial assistance for repairs to the property. Stephen declined and, on March 21, 2017, the Levendoski Children filed a petition for the partition and sale of Wood Moor.

On September 8, 2017, Stanley filed a motion to dismiss and/or for summary judgment. The same day, the Levendoski Children filed a cross-motion for summary judgment. On September 29, 2017, the Levendoski Children filed a motion to strike Stanley's designated evidence and a motion to strike his defense of waiver as insufficient because it had not been pleaded in his original answer. On October 2, 2017, Stanley filed a motion for leave to file an amended answer.

On October 11, 2017, the trial court held a hearing on all pending motions. At the beginning of the hearing, the trial court granted Stanley's motion for leave to file an amended answer and denied the Levendoski Children's motion to strike insufficient defense.… [T]he trial court then heard argument on the competing summary judgment motions.

On January 18, 2018, the trial court entered summary judgment in favor of Stanley, summarily denied the Levendoski Children's motion to strike Stanley's designated evidence, and found all other pending motions were moot. In relevant part, the trial court found as follows:

> … As a result of the execution of the Family Settlement Agreement, the Levendoskis have no interest in [Wood Moor] and lack standing to bring this action.
>
> The Levendoskis contend they could not have given up their claim in the one-half (1/2) interest of the Wood Moor property because they did not know it existed at the time they signed the Family Settlement Agreement.

* * *

> The Warranty Deed vesting the Wood Moor
> property in Stan[ley] and Sarah was duly recorded on
> September 10, 2001. As such, it was notice to the
> world of Stan[ley's] and Sarah's ownership interests.
> The Deed was properly acknowledged and placed in
> the record as required by statute.
>
> The Levendoskis have not sought to set aside the
> Family Settlement Agreement on the basis of fraud.
> It appears that the Levendoskis desire to not only
> retain all the benefits they reaped under the Family
> Settlement Agreement, but also to now claim an
> interest in the Wood Moor property. Apparently, the
> Levendoskis desire to retain the original $15,751.26
> estate assets, which they divided amongst the three
> (3) of them. They do not recognize an obligation to
> reimburse Stan[ley] for the funeral or debt payments
> made by him....
>
> The Family Settlement Agreement was approved by
> the Court on November 27, 2012. It is a valid and
> binding agreement, to which all of the "Heirs at
> Law" compromised and settled any and all disputes
> or claims. As a result, the Levendoskis have no
> interest in the Wood Moor property. Since the
> Levendoskis are not owners of an undivided one-half
> (1/2) interest in [Wood Moor], they are not entitled
> to a partition and/or sale of [Wood Moor].

Appealed Order p. 9–11.

*Levendoski v. Stevens*, 18A-PL-360 *1–3 (Ind. Ct. App. June 26, 2018) (first

ellipsis and first and second brackets added, fifth set of brackets altered,

footnote omitted), *trans. denied*.

On appeal, we concluded that the trial court did not err in granting summary judgment in favor of Stanley or in denying the Levendoski Children's motion to strike. *Id.* at 3–6. Our opinion was certified on November 26, 2018, after we denied the Levendoski Children's petition for rehearing and the Indiana Supreme Court denied transfer. Stanley filed a motion to assess costs and attorney's fees on December 17, 2018. Following a hearing on Stanley's motion, the trial court found that the claims raised in the Levendoski Children's partition petition were frivolous and, as a result, Stanley was "entitled to recover $21,905.00 in attorney's fees and $126.00 in costs resulting from defending against the [Levendoski Children's] frivolous Petition for Partition and Sale of Real Estate." Appellants' App. Vol. II p. 35.

# Discussion and Decision

The Levendoski Children contend that the trial court abused its discretion in awarding Stanley attorney's fees. Alternatively, they challenge the amount of fees imposed by the trial court.

The Levendoski Children spend a significant portion of their Appellants' Brief rehashing the arguments that were found to be without merit in the prior appeal. To the extent that the Levendoski Children attempt to challenge the propriety of our prior conclusions, we reject these attempts and remind the Levendoski Children that they are estopped from re-litigating these arguments as our decision in the parties' prior appeal is binding upon the parties as the law of the case. *See Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018)

(providing that issue preclusion, also known as collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit). Thus, we will only consider their arguments insofar as they are relevant to their contention that the trial court abused its discretion in awarding Stanley attorney's fees.

[8] While litigants in Indiana are usually required to pay their own attorney's fees, *see Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), *trans. denied*, the "general recovery rule" provides that

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>     (1) brought the action or defense on a claim or
>     defense that is frivolous, unreasonable, or groundless;
>     (2) continued to litigate the action or defense after the
>     party's claim or defense clearly became frivolous,
>     unreasonable, or groundless; or
>     (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).

> A claim is "frivolous" if it is made primarily to harass or
> maliciously injure another; if counsel is unable to make a good
> faith and rational argument on the merits of the action; or if
> counsel is unable to support the action by a good faith and
> rational argument for extension, modification, or reversal of
> existing law. A claim is "unreasonable" if, based upon the
> totality of the circumstances, including the law and facts known
> at the time, no reasonable attorney would consider the claim
> justified or worthy of litigation. A claim is "groundless" if no

> facts exist which support the claim relied upon by the losing party.

*Am.'s Directories Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1070–71 (Ind. Ct. App. 2005) (internal citations omitted), *trans. denied*.

[9] Generally, when reviewing an award of attorney fees under Indiana Code section 34-52-1-1, we first review the trial court's findings of fact under a clearly erroneous standard and review the legal conclusions of the trial court de novo. *Id.* "We review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard." *Id.* "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.*

## I.  Award of Attorney's Fees

[10] The trial court awarded Stanley attorney's fees after determining that the claims raised in the partition petition were frivolous.  The Levendoski Children challenge this determination, claiming that a number of the trial court's findings are clearly erroneous.  They also claim that the record demonstrates that the claims raised in their partition petition were not frivolous, but rather were supported by valid, rational, and meritorious arguments.[1]

---

[1]  Despite the Levendoski Children's continued classification of their claims as meritorious, both the trial court and this court previously found these arguments to be without merit.

## A. Challenge to Trial Court's Factual Findings[2]

[11] The Levendoski Children challenge Findings 6, 12 through 20, 22, 24, 26, 27, 29, 32, 35 through 39, 41, and 43 through 49, claiming that the challenged findings were either (1) not relevant to the question of whether Stanley was entitled to recover attorney's fees, (2) disputed, or (3) based on inadmissible hearsay. They also challenge some of these findings by arguing that they include factual inferences beyond the statements made by the trial court. Review of the challenged findings reveals that many of these findings can be categorized as restatements of the facts set forth in our prior decision and the procedural history of this case. While some of these facts may not relate directly to whether the claims raised in the Levendoski Children's partition petition were frivolous, they are helpful to the reader as they paint a full picture of the history of the parties' litigation. We cannot say that it was clearly erroneous for the trial court to include such facts.

[12] The Levendoski Children challenge Findings 18 and 19, which relate to a $122,000 home-equity line of credit opened by Stanley and Sarah, as being

---

[2] The Levendoski Children moved to strike some of Stanley's designated evidence, including portions of Stanley's deposition, during the summary judgment proceedings. The trial court denied this motion, and we affirmed the trial court's denial on appeal. Thus, to the extent that the Levendoski Children's claims can be interpreted as a challenge to the admissibility of Stanley's designated evidence, we will not reconsider these claims in the current appeal. *See Freels*, 94 N.E.3d at 342.

based on hearsay statements contained in Stanley's discovery deposition.[3] However, Defendant's Exhibit A, which was admitted without objection during the January 29, 2019 hearing on Stanley's request for fees, contains a copy of the mortgage recorded in Allen County relating to the home-equity line of credit. Stanley's designated evidence filed in support of his motion for summary judgment also appears to include documents relating to the line of credit which was recorded approximately nine months prior to Sarah's death.[4] Given that the record contains documentary support for these findings beyond the statements allegedly contained in Stanley's deposition, we cannot say that these findings are clearly erroneous.

[13] The Levendoski Children challenge Findings 37, 38, and 39, which outline the fact that partition was not likely to result in a financial recovery by them, as being based on unfounded assumptions and hearsay and as being irrelevant to whether the claims raised in the partition petition were frivolous. In support, they assert that the figures contained in these findings are based on Stanley's counsel's unfounded assumptions and hearsay statements contained in Stanley's discovery deposition. However, these findings are supported by Defendant's Exhibit A. Again, given that the record contains documentary

---

[3] We are unable to review the exact statements made by Stanley or to examine whether he was questioned by the Levendoski Children's counsel about the line of credit because the parties have failed to include either the relevant portions or a full copy of Stanley's deposition in the record on appeal.

[4] As was the case with Stanley's deposition, the parties have also failed to include the other evidence designated by Stanley with respect to his motion for summary judgment in the record on appeal.

support for these findings beyond the statements allegedly contained in Stanley's deposition, we cannot say that these findings are clearly erroneous.

[14] The Levendoski Children also challenge Finding 24, which reads as follows: "On October 14, 2011, approximately two and one-half years after Sarah's death, [Stanley] opened the Estate for the propose of distributing the settlement proceeds, approximately $156,000.00, obtained solely by [Stanley]." Appellants' App. Vol. II pp. 23–24. We agree with the Levendoski Children that this finding contains numerous errors, namely that the Estate was opened approximately three and one-half years after Sarah's death by Stanley and the Levendoski Children, both Stanley and Stephen were involved in the settlement proceedings, and there were discrepancies in the record as to the exact amount of the settlement proceeds. The errors contained in this finding, however, are immaterial to the question of whether the claims raised in the partition petition were frivolous and, as such, we conclude that the errors are harmless. *See generally Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (An error is harmless when it results in no prejudice to the "substantial rights" of a party.).

## B. Whether the Petition was Supported by Good Faith and Rational Arguments

[15] Again, a claim is frivolous "if counsel is unable to make a good faith and rational argument on the merits of the action[.]" *Am.'s Directories*, 833 N.E.2d at 1070. The trial court determined that the claims raised in the partition petition were frivolous because the Levendoski Children were unable to make good faith and rational arguments on the merits of the action and, as a result,

no reasonable attorney would consider the claims worthy of litigation. In making this determination, the trial court pointed to the fact that the Agreement, which was entered into by the parties and approved by the trial court approximately four and one-half years before the Levendoski Children filed the partition petition, clearly stated that the Levendoski Children "hereby forever waive any rights that they may have individually or collectively to claim any of the decedent's property that is in the possession of the Surviving Spouse at the time of the execution of this Agreement" and "intend hereby to compromise and settle all claims, controversies, and disputes existing between or among them in any way arising out of or related to the estate of the Decedent." Appellants' App. Vol. II p. 184.

[16] The Levendoski Children assert on appeal that the claims raised in their partition petition were not frivolous because there was a legitimate question as to whether the terms of the Agreement applied to Wood Moor. Specifically, they argue that legitimate questions existed as to whether (1) the scope of the Agreement covered Wood Moor, (2) there was a knowing waiver, and (3) Stanley had possession of Wood Moor.

## 1. Scope of Agreement

[17] The Levendoski Children argue that the Agreement did not apply to Sarah's interest in Wood Moor because the Agreement only covered Sarah's personal-property interests. As such, they argue that their partition petition does not qualify as a "claim" under the terms of the Agreement because the request to partition and sell the property was not related to Sarah's estate. The trial court

found, and we agree, that the Levendoski Children's arguments in this regard were not raised in good faith or rational. The Agreement did not contain any limiting language that would suggest that it applied only to Sarah's personal property and not her real property interests. In fact, the terms of the Agreement indicate the opposite, *i.e.*, that it applied to any and all claims, known or unknown, that the Levendoski Children may have had in relation to Sarah's estate. Further, Sarah's estate undoubtedly included her interest in Wood Moor. *See* Ind. Code § 29-1-1-3(10) (providing that the term "estate" denotes the real and personal property of the decedent).

[18] It appears that the Levendoski Children wish to enforce the portions of the Agreement limiting Stanley's claims against Sarah's estate but not the portions of the Agreement limiting their ability to file a claim relating to Sarah's estate against Stanley. We have previously concluded that a party cannot selectively choose those rights they seek to enforce under an agreement and in turn disallow other provisions set forth in that same agreement. *TWH, Inc. v. Binford*, 898 N.E.2d 451, 453–54 (Ind. Ct. App. 2008). For these reasons, we conclude that the trial court acted within its discretion in finding the Levendoski Children's argument relating to the scope of the Agreement to be frivolous.

### 2. Knowing Waiver

[19] The Levendoski Children also argue that there was a legitimate question as to whether they knowingly waived their claims relating to Wood Moor. We cannot agree, as it is clear that they had both constructive knowledge and

constructive notice of their interest in Wood Moor at the time they executed the Agreement. Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person[.]" BLACK'S LAW DICTIONARY 1004 (10th ed. 2009). Constructive notice is "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed[.]" BLACK'S LAW DICTIONARY 1227 (10th ed. 2009).

[20] In the prior appeal, we found the Levendoski Children's assertion that they did not knowingly waive their claims relating to Wood Moor to be without merit, stating,

> In this case, the Levendoski Children knew that Sarah and Stanley owned Wood Moor at the time of her death. They *assumed*, but did not verify, that Sarah and Stanley owned the property as joint tenants with right of survivorship. The title to the property was duly recorded. Therefore, had the Levendoski Children sought out that information, they would have easily procured it, learning in a timely fashion that Sarah's interest as tenant in common had passed to them. It would be reasonable to conclude that at the time Stephen probated Sarah's will, he should have undertaken this investigation. But he did not, nor did either of his siblings. In our view, had the Levendoski Children exercised reasonable care and diligence, they would have known of their interest in Wood Moor.

*Levendoski*, 18A-PL-360 *6. We concluded that the trial court had properly determined that the Levendoski Children had constructive knowledge of their interest in the residence at the time they executed the Agreement. For these same reasons, we conclude that the Levendoski Children undoubtedly had both

constructive knowledge and notice of their interest in Wood Moor at the time they executed the Agreement and they could not, in good faith, argue otherwise. The trial court, therefore, acted within its discretion in finding their arguments in this regard to be frivolous.

### 3. Possession

[21] The Levendoski Children argue that the Agreement did not extinguish their interest in Wood Moor because Stanley was not in possession of Wood Moor at the time the Agreement was executed. Specifically, they claim that Stanley was not in possession of Wood Moor because he was not living in it at the time the Agreement was executed. Like the trial court, we conclude that this argument is irrational given that it is undisputed that Stanley, while not living in Wood Moor, has maintained control of it since he and Sarah bought it in 2001. The trial court found, and the record seems to indicate, that the parties operated as though Stanley was the sole owner of Wood Moor for the nine years preceding this litigation.[5] Stanley has maintained the property; made necessary repairs; and paid the mortgage, insurance, and real estate taxes. He has rented the property, collecting the rent payments and paying utilities when said utilities were not covered by renters. Given the undisputed evidence demonstrating that Stanley has continuously maintained control over the property, we believe that the facts of this case support only one conclusion, *i.e.*, that Stanley was in

---

[5] This is evidenced by the fact that the Levendoski Children made no attempt to claim their interest in Wood Moor prior to filing the partition petition.

possession of the residence at all relevant times. The Levendoski Children cannot raise a good faith and rational claim otherwise. As such, we conclude that the trial court acted within its discretion in finding that the Levendoski Children's arguments relating to possession to be frivolous.

### 4. Additional Arguments

[22] The Levendoski Children further argue that previous rulings of the trial court suggest that the trial court believed that they had a meritorious claim. In support, they point to the fact that the trial court denied two motions to dismiss filed by Stanley prior to granting his motion for summary judgment. One may infer from the record, however, that at the time it denied the motions to dismiss, the trial court was not yet aware of the Agreement. The trial court became aware of the Agreement when Stanley designated it as evidence in support of his motion for summary judgment. Once it became aware of the Agreement, the trial court ruled in favor of Stanley. The Indiana Rules of Trial Procedure provide limited instances when a court may dismiss a lawsuit. *See* T.R. 41. It is unclear from the record on appeal on what grounds the trial court denied Stanley's motions to dismiss. Therefore, it would be improper to infer from these denials that the trial court believed that the Levendoski Children had a meritorious claim.

[23] In addition, we are unconvinced by the Levendoski Children's argument that the trial court's determination that the claims raised in their partition petition were frivolous was "based upon the court's wholesale acceptance of [Stanley's] factual allegations." Appellants' Br. p. 29. The trial court's determination is

based on the established facts of this case and is supported by the documentary evidence submitted to the court, *i.e.*, the Agreement.

[24] The Levendoski Children also argue that Stanley waited for an unreasonable amount of time after the entry of summary judgment before seeking fees. The record reveals, however, that Stanley's delay in filing his request for fees corresponds with the Levendoski Children's appeal of the trial court's entry of summary judgment. Stanley filed his request for fees approximately three weeks after the decision in the prior appeal became certified. We do not believe that it was unreasonable for Stanley to wait until the appeal had been resolved before filing his requests for fees, as it was not until then that he could be sure that he was the prevailing party.

## II. Amount of Attorney's Fees

[25] We next turn our attention to the Levendoski Children's alternative contention that the trial court abused its discretion in setting the amount of fees ordered. Again, "[a] trial court's decision as to the amount of attorney's fees is … reviewed under an abuse of discretion standard." *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 287 (Ind. Ct. App. 2004). "An award of attorney's fees will be reversed on appeal as excessive only where an abuse of the trial court's discretion is apparent on the face of the record." *Id.* "The trial court may look to the responsibility of the parties in incurring the attorney's fees, and the trial judge has personal expertise that he or she may use when determining

the reasonableness of the fees." *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 516 (Ind. Ct. App. 2009).

[26] In his petition requesting attorney's fees, Stanley indicated that he had incurred attorney's fees and litigation expenses in excess of $39,000 in defending the partition petition. Following a hearing on Stanley's petition, the trial court awarded Stanley $21,905 in attorney's fees and $126 in costs. The trial court's award is supported by Stanley's counsel's affidavit outlining the work he has performed on Stanley's case. The trial court broke the award down as follows:

|  | Time | Cost |
|---|---|---|
| Pre-Suit Charges | 5.6 hours | $1260.00 |
| Commencement of Litigation through Deposition | 26.9 hours | $6052.50 |
| Motion for Summary Judgment and Mediation Charges | 42.0 hours | $9450.00 |
| Additional Mediation Charges | 6.3 hours | $1417.50 |
| Post-Mediation through Judgment Charges | 7.8 hours | $1755.00 |
| Motion to Assess Attorney Fees and Cost Charges | 3.2 hours | $720.00 |
| Hearings on the Motion to Assess Attorney Fees and Appointment of Commissioner Charges | 5.0 hours | $1250.00 |

| Total | | $21,905.00 |
|---|---|---|
| | | |

Appellants' App. Vol. II pp. 129–30.

## A. Whether the Amount of Fees Were Punitive

[27] In challenging the amount of the attorney's fees award, the Levendoski Children argue that the award is punitive. Specifically, they argue that because Stanley initially only "sought an assessment of $12,285.00 representing fees incurred after [Stephen's] deposition through the date of judgment on January 18, 2018," the trial court should not have awarded any fees incurred prior to Stephen's deposition or post-judgment. Appellants' Br. p. 37. In making this argument, however, the Levendoski Children acknowledge that the trial court "may have had the discretion" to assess fees for all charges incurred in relation to the litigation. Appellants' Br. p. 37.

[28] Given that the Levendoski Children had knowledge of the Agreement and that the Agreement was executed well before the Levendoski Children initiated the instant litigation, we cannot say that the trial court abused its discretion in awarding fees relating to the entirety of the trial court proceedings. Furthermore, to the extent that the Levendoski Children argue that they were penalized for pursuing the first appeal, we disagree, noting that the trial court's order is clear that the award of attorney's fees did not include any fees relating to the first appeal. The trial court did not abuse its discretion in ordering the Levendoski Children to pay $21,905 of Stanley's attorney's fees.

# B. Ex-Parte Communications

In challenging the award of attorney's fees, the Levendoski Children also allege that Stanley's counsel engaged in improper ex-parte communications with the trial court. Stanley's counsel acknowledges that he engaged in brief conversations with the trial court and court staff for the purpose of verifying the court's email address and whether the court would accept multiple .pdf files containing Stanley's designated materials.[6] Stanley asserts that the remainder of the time at issue was spent collecting and arranging the designated materials in the manner requested by the trial court. Given that the trial court requested that the pleadings be both filed electronically and submitted via email, it is not unfathomable or improper that a party would need to verify this type of procedural information.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.

---

[6] The record is unclear as to whether counsel spoke to the trial judge, of course the better practice would be to have all communications, even for procedural matters, be handled by court staff.