**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**DANIEL G. SUBER**
**LIZABETH R. HOPKINS**
Daniel G. Suber & Associates
Valparaiso, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN G. KERR**
Hoeppner Wagner & Evans, LLP
Valparaiso, Indiana

FILED

Apr 01 2013, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL G. SUBER & ASSOCIATES, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1205-CT-278 |
| | ) | |
| EDWARD SMITH, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
Cause No. 45C01-0508-CT-117

**April 1, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Daniel G. Suber & Associates (Suber), appeal the trial court's grant of Appellee-Respondent's, Edward Smith (Smith), motion to enforce an equitable lien and its award of attorney fees.

We affirm.

## ISSUES

Suber raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by determining that Smith is entitled to 25% of all attorney fees collected in a particular case.

Additionally, Smith raises one issue for our review: Whether he is entitled to recover appellate attorney fees pursuant to Indiana Appellate Rule 66(E).

## FACTS AND PROCEDURAL HISTORY

In October 2004, Rose Sanders (Sanders) retained Smith to represent her in a personal injury action after being injured because of a fall at a casino. On October 4, 2004, Sanders and Smith entered into a fee agreement which indicated that Smith would be entitled to 40% percent of any settlement and further provided that he could associate or co-counsel with other law firms. Smith investigated the potential defendants, twice inspected the premises where Sanders fell, and conducted legal research in support of the claim. Following the filing of a five-count complaint and following the transfer of the case to Lake County, Smith met with attorney Jennifer Davis (Davis), an associate at Suber, to discuss a joint representation of Sanders. Smith, Davis, and Sanders met in

Warsaw, Indiana and reached an agreement with respect to joint representation of Sanders. Smith explained to Sanders that this agreement would not alter her recovery. Thereafter, Smith prepared a fee-splitting agreement in which he would receive 25% of the attorney fees and Davis 75% and gave the only copy of the arrangement to Davis. Davis denied that the parties ever entered into an agreement regarding the division of attorney fees. On February 22, 2006, Smith drafted a Memorandum of Understanding which discussed four cases referred to Davis and the fee structure applicable in each referral case. With respect to the Sanders' case, the Memorandum states "4. Ms Sanders case is also a referral basis; you get the lion's share of any settlement. I will participate in any way you need me." (Appellant's App. p. 49). Although a signature line is included for Davis, her signature is missing on the memorandum of understanding.

Two amended complaints were filed, respectively on August 22, 2005 and August 26, 2008, by Suber, and signed by both Smith and Suber as counsel of record. Over the next six years, Suber spent 1,459.85 working hours and incurred $34,005 in costs. During the course of the litigation, Smith received and reviewed all discovery and interrogatories. Smith also attended several depositions, two mediations, and the settlement conference. Smith did not record his time working on the case and at no point did Suber object to Smith's continued representation of Sanders. The case finally settled in October 2011 for $425,000.

Following the settlement, Smith demanded 25% of the attorney fees collected by Suber. Suber rejected the demand and informed Smith that he was willing to split the fee in proportion to the work performed. On December 16, 2011, Smith filed his notice of

3

intention to hold equitable lien and motion to enforce equitable attorney's lien. In response, Suber filed a motion to strike the pleadings. On March 1, 2012 and April 18, 2012, the trial court conducted a hearing on Smith's motion. On May 3, 2012, the trial court granted Smith's motion to enforce the equitable lien and awarded Smith 25%, or $47,500, of the $190,000 attorney fees received in the Sanders case,

Suber now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

On appeal from an award of attorney fees, this court applies the clearly erroneous standard to factual determinations, reviews legal conclusions *de novo*, and determines whether the amount of a particular award constituted an abuse of the trial court's discretion. *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 516 (Ind. Ct. App. 2009). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. A trial court has wide discretion in awarding attorney fees. *Id*. The trial court may look to the responsibility of the parties in incurring the attorney fees and the trial court has personal expertise that it may use when determining the reasonableness of the fees. *Id*.

Here, the trial court rendered a general judgment and did not make any findings of fact or conclusions of law. When the trial court makes no findings of fact, we presume the general judgment is based on findings supported by the evidence. *Greensburg Local No. 761 Printing Specialties v. Robbins*, 549 N.E.2d 79, 80 (Ind. Ct. App. 1990). We do not weigh conflicting evidence, but consider only the evidence most favorable to the

4

prevailing party. *Id.* If there is evidence having probative value which sustains the judgment of the court below, the judgment will not be disturbed. *Id.* Finally, when confronted with a general finding in favor of the plaintiff, we must affirm the judgment of the court if it is sustainable upon any legal theory which is supported by the evidence. *Id.*

## II. *Attorney Fees*

Suber challenges the trial court's award to Smith of 25% of the collected attorney fees. Referencing the two possible theories on which the trial court awarded the attorney fees—the existence of a fee-splitting agreement or the *quantum meruit* theory—Suber maintains that neither of these two legal avenues support the trial court's decision. We reiterate that in the absence of any findings, the trial court could have supported its decision on either ground.

## A. *Fee-Splitting Agreement*

With respect to fee-splitting agreements between attorneys, Indiana Rule of Professional Conduct 1.5(e)[1] (emphasis added) provides

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
> (2) the client agrees to the arrangement, including the share each lawyer will receive, and *the agreement is confirmed in writing*; and
> (3) the total fee is reasonable.

---

[1] We recognize that the Rules of Professional Conduct have limited application outside of the attorney discipline process and merely provide the Rule here as a reference not as a basis for our decision. *See Liggett v. Young*, 877 N.E.2d 178, 182 (Ind. 2007).

5

Here, the parties did not enter into evidence a written fee-splitting agreement indicating that Sanders had agreed to the arrangement. During the hearing, Smith testified that he had drafted an agreement memorializing a fee-splitting arrangement in which he would receive 25% of the attorney fees and Davis 75% and gave the only copy of the agreement to Davis. On the other hand, Davis did not recall any discussions about the allocation of fees nor did she remember signing the agreement. The only evidence presented to the trial court indicating a fee sharing arrangement is an unsigned memorandum of understanding awarding Suber a "lion's share of the any settlement." (Appellant's App. p. 49).

Smith now attempts to overcome the absence of a written agreement by asserting that the existence of a signed and written contract can be established by parol evidence. We disagree. Parol evidence may be considered if it is not being offered to vary the terms of the written contract, and to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract. *Krieg v. Hieber*, 802 N.E.2d 938, 944 (Ind. Ct. App. 2004). Our supreme court has held that parol evidence may be considered to show the nature of the consideration supporting a contract. *Id*. In addition, parol evidence may be considered to apply the terms of a contract to its subject matter and to shed light upon the circumstances under which the parties entered into the written contract. *Id*. In other words, parol evidence is a tool to clarify the terms of a written contract, it cannot be used as a substitute for a written agreement.

B. *Quantum Meruit*

6

*Quantum meruit* is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of the work performed or material furnished if used by another and if valuable. *Fitzpatrick v. Kenneth J. Allen and Assoc., Inc*., 913 N.E.2d 255, 266 (Ind. Ct. App. 2009). We have previously explained that "[t]he existence of a valid express contract for services . . . precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of *quantum meruit*." *Landis v. Brooks*, 637 N.E.2d 1365, 1367 (Ind. Ct. App. 1994), *reh'g denied, trans. denied*. However, here, the parties' rights are not contractually controlled and thus recovery can be had under *quantum meruit*.

In the case of attorney and client, the value is that of "the benefit the client received" from the attorney's work. *Major v. OEC Diasonics, Inc*., 743 N.E.2d 276, 282 (Ind. Ct. App. 2001). If the attorney is not compensated for the work performed on the client's case that resulted in a recovery for the client, the client is unjustly enriched. *Id*. Therefore, there must be a determination of the dollar value of the attorney's services, to offset the unjust enrichment and based on the value conferred on the client. *Id*. Conceding that Smith is entitled to recover attorney fees under *quantum meruit*, Suber maintains that a reasonable assessment of Smith's activities in the Sanders' case amounts to an award of 2% of the recovered attorney fees, rather than 25%.

Considering only the evidence most favorable to the prevailing party, the record reflects that Smith conducted an extensive investigation of the merits of the case prior to drafting and filing the five-count complaint. During the proceedings, Smith received and

7

reviewed all discovery and interrogatories, attended depositions, two mediations, and the settlement conference. Smith initially functioned as the client liaison between Sanders and Suber, until Sanders became more comfortable with Suber and contacted the law firm directly. Smith also would assist Sanders in the preparation of responses to discovery and would drive Sanders to the independent medical examination as she lacked her own transportation. Smith was also successful in persuading a witness to cooperate and testify on Sanders' behalf. Smith was present during the final settlement conference and advised Sanders about the proposed settlement.

Mindful of the trial court's expertise in determining the reasonableness of fees and the totality of the circumstances before us, we conclude that the trial court did not abuse its discretion in awarding Smith 25% of the recovered attorney fees.

### III. *Appellate Attorney Fees*

Smith now requests an award of appellate attorney fees pursuant to Indiana Appellate Rule 66(E) because he asserts that Suber's appellate brief amounted to procedural bad faith.

Indiana Appellate Rule 66(E) provides, in pertinent part, "[t]he [c]ourt may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the [c]ourt's discretion and may include attorney's fees." Our discretion to award attorney fees under the Rule is limited however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2006). Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we

8

must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id*.

Indiana appellate courts have formally categorized claims for appellate attorney fees into substantive and procedural bad faith claims. Here, Smith raises a procedural bad faith claim. This occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id*. at 347. Even if the appellant's conduct falls short of that which is deliberate or by design, procedural bad faith can still be found. *Id*.

Smith's single complaint involves Suber's statement of the case. Alleging that Suber's statement of the case solely focuses on the facts which support its arguments, omits several facts in favor of Smith, and is argumentative, Smith claims that these omissions required him "to invest time and effort to prepare a proper statement of the case." (Appellee's Br. p. 16). We cannot say that these perceived defects amount to a flagrant disregard of the form and content requirements of the rules of appellate procedure so as to grant Smith appellate attorney fees. Therefore, we deny Smith's request for appellate attorney fees.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by awarding Smith 25% of all attorney fees collected in a particular case. In addition, we deny Smith's request for appellate attorney fees.

Affirmed.

BAKER, J. and BARNES, J. concur